OLIVE B. HAYS, APPELLEE, V. CARRIE S. CHRISTIANSEN ET AL., APPELLANTS.

FILED JULY 14, 1926.   No. 24708.

1.  **Appeal:** APPEAL FROM ORDER OF CONFIRMATION. Where a final decree is rendered foreclosing a mortgage, stay taken, sale had and confirmed, and appeal taken from the order of confirmation, this court has no power to set aside the decree.

2.  ———: ———: MANDATE: VALIDITY. In such case, where the order of the court was merely to set aside the order of confirmation and order an accounting, a mandate issued thereon reversing the decree is void *pro tanto*.

3.  **Pleading:** FILING AMENDED PETITION AFTER DECREE. The filing of an amended petition after entry of final decree not appealed from will not be considered an abandonment of the decree upon an order of the appellate court remanding the case simply for an accounting.

4.  **Mortgages:** MORTGAGEE IN POSSESSION: ACCOUNTING. A mortgagee in possession is chargeable with the reasonable rental value of the premises plus any amounts actually received in excess of such value, and should be credited with the reasonable cost of necessary repairs and improvements, and with amounts paid for insurance and taxes.

5.  **Appeal:** LAW OF THE CASE. Where, upon a second hearing, additional evidence is produced upon a question of fact involved in an appeal, the holding of the appellate court as to such fact does not become the law of the case.

6.  **Estoppel:** RENTAL VALUE. The refusal by mortgagee in possession of offers, upon certain conditions, of $300 a month for the premises did not, under the circumstances of this case, estop her from claiming that the reasonable rental value was less than that sum.

7.  **Evidence** examined, and reasonable rental value of the premises fixed at $150 a month.

APPEAL from the district court for Lancaster county: JEFFERSON H. BROADY, JUDGE. *Reversed, with directions.*

*C. C. Flansburg,* for appellants.

*Stout, Rose, Wells & Martin* and *Fred C. Foster, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD, THOMP-
SON and EBERLY, JJ., and REDICK, District Judge.

REDICK, District Judge.

Action to foreclose mortgage. One McLaughlin, April 1,
1915, executed nineteen promissory notes for $1,000 each,
due every six months thereafter, including April 1, 1924;
also one note for $16,000, due April 1, 1925, all bearing
6 per cent. interest payable semi-annually. On the same
date, to secure said notes, he executed a mortgage on cer-
tain lots with a four-story brick building thereon in the
city of Lincoln. The notes provided that they should draw
interest at 10 per cent. after maturity and the mortgage
contained a similar provision, and also that upon failure to
pay any interest or principal when due the whole indebt-
edness secured by said mortgage, at the option of the mort-
gagee and without notice to mortgagor, became immediately
due and collectible. It was further provided that, upon
failure of mortgagor to keep the premises insured or to
pay the taxes upon the premises when due, payment might
likewise be accelerated, and that mortgagee might insure
the premises and pay the taxes, charge the same to mort-
gagor with 10 per cent. interest, and add the same to the
mortgage debt. Shortly after the execution of the mortgage
the defendant Carrie S. Christiansen purchased the prop-
erty, and her husband Nels is joined as defendant.

The first note, due October 1, 1915, together with interest
on the entire debt was paid. Default was made on the note
due April 1, 1916, and no further payments were made
thereafter upon the notes nor for insurance and taxes.
August 16, 1916, the mortgagee exercised his option to
declare the entire amount due and brought this action to
foreclose the mortgage. The defendant filed no answer and
on September 24, 1917, a decree was rendered finding the
amount due upon the mortgage to be $39,806.81 with in-

terest at 10 per cent. per annum from that date. By this decree no allowance or credit was given for rents and profits received by the mortgagee while in possession of the premises. The defendant filed a request for stay of nine months, at the expiration of which time an order of sale was issued and property sold to plaintiff for $40,000. Motion for confirmation of the sale being filed, on July 30, 1918, the defendant Carrie S. Christiansen, in opposition thereto, filed what she terms an amended and supplemental cross-petition alleging that upon threats by plaintiff of the appointment of a receiver, with the consent of defendants in August, 1916, the mortgagee took possession of the premises and has retained the same together with the rents and profits thereof ever since; that the decree was grossly excessive; that the premises were reasonably worth $1,000 a month; that $28,000 should be applied upon the decree; that plaintiff had contracted to sell the premises to Rocke, on December 1, for $60,000, and placed him in possession; and that defendant is entitled to an accounting for the reasonable rental value of said premises; and defendant prayed that an accounting be taken and confirmation delayed until the results were ascertained, and that the difference between the amount so found due plaintiff and the amount bid at the sale or the amount of the sale to Rocke be paid to the defendant. A hearing was had and the amount found due at that date, after crediting the net rentals received by the mortgagee, $738.54, in the sum of $44,593.24, and sale confirmed. Defendant appealed to this court, where the judgment was affirmed in every respect, except an order appointing a receiver, which was reversed. See opinion of Cain, C., 105 Neb. 586. That opinion established, as the law of the case, that the mortgagee was chargeable, not only for the rents and profits he actually received, but for such as he, with diligence, could have received; also, that he should be credited with the reasonable cost of improvements made by him in good faith, and which were absolutely necessary for the preservation and management of the property.

A rehearing was granted upon questions growing out of

the accounting, with the result that the "former judgment of this court be vacated, and that the judgment of the district court confirming the sale and approving the account of the plaintiff and in appointing a receiver be reversed and the cause remanded, with instructions that there be another accounting of the rents and profits of the building from August 28, 1916, to the time when the account shall be taken in the district court; that, in accordance with this opinion, the defendants have the right to redeem, and that the order of the district court appointing a receiver be vacated, and that no fees or costs be allowed on account of such receivership." This, Cain, C., second opinion was not published, but in due time a mandate was transmitted to the lower court which in terms reversed the decree as well as the order confirming the sale and directed further proceedings in accordance with the opinion.

Plaintiff then filed in district court what she termed an amended petition, March 29, 1922, which was in the identical language of the original petition, with the additional allegation of the payment on November 9, 1916, of delinquent taxes of the sum of $808.75, which with interest she prayed might be included, and prayed for a foreclosure of the mortgage, alleging the amount due at $35,825.23, together with said taxes and 10 per cent. interest. Defendant Christiansen answered said amended petition, admitting the execution of the mortgage and purchase of the property by defendant, denying any default, and alleging that the rental value of the premises as found in the opinion of the supreme court (Cain second opinion) was sufficient to pay all stated instalments of principal and interest and leave a balance to be credited upon the principal, that the amount due on said mortgage was less than $19,000, and that since the Rockes went into possession they had collected rents in the sum of $20,000, that said mortgage had been fully paid, and prayed that the same might be canceled and title quieted in defendant Carrie S. Christiansen. Thereupon another trial was had in the district court ending January 29, 1924, at which the evidence taken upon the former accounting and

additional evidence was received, resulting in a decree April 3, 1925, confirming the sale and dismissing the cross-petition of the defendants, and defendants have again appealed.

The points made by defendants for reversal of decree are as follows: (1) That by the mandate of this court following the opinion in 105 Neb. 586, the original decree was reversed and set aside; (2) that by the filing of the amended petition by plaintiff the original decree was abandoned; (3) that by the second opinion of Cain, C., it was established as the law of the case that the reasonable rental value of the premises was $300 a month; (4) that plaintiff by her agent is estopped from claiming that the reasonable rental value of the premises was less than $300 a month; (5) that the court erred in allowing plaintiff amounts paid by her for insurance and taxes; (6) that the court erred in confirming the sale, there being no decree upon which to base it; (7) that the court erred in fixing the amount necessary to redeem.

A reargument was ordered before the court presenting the matters now to be disposed of.

We will now take up in order the points made by defendants Christiansen:

1. That the original decree was reversed and set aside. This is not well taken for three reasons: First. The second opinion of Cain, C., did not assume to set aside the decree, but only the order confirming the sale, and the allowance of credit to the defendant. Second. While the mandate by certain language might be construed as setting aside the decree, properly construed as a whole and with reference to the opinion it did not do so. Third. This court was without power to set aside that decree, after stay and no appeal taken. If the mandate issued by the clerk required the construction claimed for it, it would be simply void to the extent that it reversed the original decree.

2. That by the filing of the amended petition plaintiff abandoned the original decree. The discussion upon this

point revolved about the question whether or not the pleading called an amended petition was of that character or a supplemental petition, and cases are cited illustrating the nice distinctions between the two classes of pleadings; but, hard as we have tried, we have been unable to discover any force in the distinction as applied to the present situation. As a matter of fact the pleading was not supplemental, because the only new matter introduced was a charge for taxes paid November 9,1916, which was before the entry of decree September 24, 1917. We are cited to no authority sustaining the proposition that the filing of an amended petition constituted an abandonment of the original decree from which no appeal had been taken and upon which a sale had been had and confirmed. The only cases cited are in pending suits where it is held the filing of an amended petition is an abandonment of the original petition. They have no application here.

3. That the second opinion by Cain, C., established the rental value of the premises at $300 a month, and is therefore the law of the case. We think this point is not well taken. In the first opinion it was held that the conditions attached to the Rocke offer, that the building be put in repair and he be given a five-year lease, were sufficient to justify a rejection of the offer.

It is proper here to note that there is no evidence that Barkley rejected the "Rocke offer." The only statement that he ever heard of it is in answer to the last question before the evidence closed. Witness Nels Christiansen was being interrogated as to the repairs required by Rocke, and he is asked by his counsel: "Q. On your former examination I believe you testified that you took that up with Mr. Barkley? A. Yes; I did." But nowhere else in the record did he so testify, no details of any conversation on that subject are given, and he had already testified that he never had any other talk with Barkley about the possession of the building except the one relative to the offer of Poore, when his brother was present. Moreover Rocke testified that Christiansen himself refused his offer—"would not

listen—told me he could do better, and that settled it. We did not go into details, not at all." This does not seem to have been denied by Christiansen. In his second opinion the commissioner said, "On reconsideration we are not altogether satisfied with this view of the Rocke offer," for the reason that Barkley did not put his objection upon that ground, but said, "I can get you more money out of it." The commissioner then continued: "The fact, too, that Mr. Rocke, who had himself operated the building for several years and knew its earning capacity, offered to pay $300 a month for the building, is some evidence that such a rental was then obtainable. This evidence is persuasive that the plaintiff mortgagee with diligence could have secured more rent than she actually received, and our previous conclusion on the evidence in this respect was erroneous, and that plaintiff's account should not have been approved." And further: "The plaintiff's account, therefore, was erroneous in respect to the receipts shown thereby, and * * * should be charged with the amount of rent she could have received, and the defendants still have the right to redeem. The items of expenditure set forth in plaintiff's account, we think, were correct, but it is certain that the items of receipt should be largely increased. The offer of Mr. Poore of $310 a month, and the offer of Mr. Rocke of $300 a month, and Mr. Barkley's statement that neither of these amounts was enough, is, we think, sufficient evidence to show that plaintiff could with diligence have obtained part of that sum. Plaintiff is still in possession of the building as mortgagee and must account for rents and profits to date." We think this is far from holding that the value of the premises was the definite sum of $300 a month. If it had been the intention to so hold, the order for a new accounting would have directed the rentals to be credited at that figure, but this was not done. Furthermore, additional evidence as to the rental value of the premises was received on the second accounting making a material and substantial change in the testimony. In such case the rule of law of the case has no application. *Phelps County Farmers Mut. Ins. Co. v. Johnston*, 66 Neb. 590.

Hays v. Christiansen.

4. That plaintiff is estopped from claiming the rental value less than $300. The Rocke offer above mentioned need not be considered further, and the claim of estoppel is based upon evidence of Christiansen and his brother, Nels, that they went to Barkley and told him of the Poore offer of $310 a month, and that Barkley said: "That is not enough. If you will give me possession of this building, I will take this building, I can get you more money out of it, and I will apply it on the debt, and when it is turned down in shape, I will turn this building back to you and it will be all right, and if you don't do this I will go ahead with my suit and get a decree and have a receiver appointed. Now, it is up to you, what do you want to do? We weren't in there over ten minutes, my brother and I." Barkley denied saying that he could get them more money, but the commissioner found that the Christiansens were entitled to greater credit, so we may assume that the conversation was as claimed by the defendants. The question then is whether the statements of Barkley are to be considered merely as evidence upon the question of the rental value of the premises, or whether the plaintiff is bound absolutely by his expression of opinion on such value. The defendants base their contention upon the proposition that, where a party has based his conduct upon certain reasons stated by him, he will not be permitted, *after litigation* has commenced, to assert other reasons for his conduct; that he cannot "mend his hold." There is probably no proposition better established than this in our jurisdiction in cases in which it is applicable. Defendants cite six cases from this court beginning with *Ballou v. Sherwood*, 32 Neb. 666, and ending with *Mitchell v. Brotherhood of L. F. & E.*, 103 Neb. 791, in all of which the position of defendant, from which it was claimed he was not permitted to depart, was taken before litigation commenced. In the *Ballou* case defendant refused to go on with a contract of exchange solely because of the pendency of a suit involving the title, and after suit brought tried to justify his refusal on different grounds. In another, *Frenzer v. Dufrene, 58*

Neb. 432, defendant refused to sign the mortgage because it contained a gold clause, and after suit attempted to assign other reasons. In *State v. County Commissioner of Cass County,* 60 Neb. 566, the defendants refused to draw a warrant in favor of the plaintiff because one had already been drawn and paid to a party claimed to be plaintiff's agent, and upon a second trial attempted to deny plaintiff's contract and that any claim had ever been allowed. In *First State Bank v. Stephens Bros.,* 74 Neb. 616, the bank refused to pay a check because the drawer instructed them not to, and after suit brought attempted to defend on the ground of no funds. In *Mitchell v. Brotherhood of L. F. & E.,* 103 Neb. 791, defendant insurance company refused payment only because no proof of death had been furnished, and then sought to defend upon the ground of misrepresentation in the application. The rule of estoppel is salutary, although in many cases its application results in preventing the actual truth being shown. It is quite remarkable, in view of the amount of oral and printed argument upon this question, that it is not referred to in the pleadings. Not a reference to the Poore or Rocke offer is to be found in either the cross-petition or answer of defendants. In the cross-petition filed December 30, 1918, we find this allegation regarding the turning of the possession to the mortgagee: "That this answering defendant at first objected to turning of the same over and advised said plaintiff * * * that she could rent the two upper stories for $360 a month," that said plaintiff refused to allow her to make said arrangement, alleging as a reason that that was insufficient rent for the premises; that if turned over "a larger rent could and would be collected." If this has reference to the Poore offer it suffered a terrible shrink by the time the evidence was taken by which Poore's offer was said to be $310 for the whole building except part of the first floor. But in the answer to the amended petition, filed February 14, 1923, all this was abandoned, the only allegations upon the subject of rental being that this court had found the reasonable rental value to be $300.

Hays v. Christiansen.

There is not even an allegation as to what the rental value is. There is no estoppel pleaded, but if there were the evidence does not establish it. Barkley's statement was no more than the expression of an opinion, as if he had said, "I think it is worth more money." This might be a mistake in judgment, but the limit of its effect would merely be to charge him with the actual rental value. To erect upon such foundation a contract of guaranty that such a sum would be secured would result in a structure the reverse of a pyramid.

5. That the court erred in allowing expenditures by plaintiff for taxes and insurance. The fact that these payments were made is not in dispute, but it is contended that, because no pleading was filed by plaintiff setting up these items, the court had no power to allow them. The situation was this: The decree foreclosing the mortgage was affirmed by this court, but the order confirming the sale was reversed and the case remanded for the purpose merely of an accounting between the parties. It would then have been perfectly proper for pleadings appropriate to the accounting to be filed but it was not necessary; and the evidence was received without objection. We think it is now too late for this objection. The plaintiff continued in the possession of the property and, as we have held, is chargeable with the reasonable rental value, and certainly was entitled to be credited with payments made in good faith for the protection of the premises. The present position of defendants is that they desire to redeem the property. The contention that they should pay merely the amount due upon the mortgage and not reimburse plaintiff for nearly $11,000 paid for taxes and insurance does not appeal very strongly to our sense of honesty and justice.

6. That the court erred in confirming the sale. This point is based upon the proposition that the original decree was reversed, and falls with that proposition.

7. That the court erred in fixing the amount necessary to redeem. Having disposed of the question of the propriety of the allowance for insurance and taxes paid by plaintiff,

the defendants not contesting the allowance for repairs in the sum of $4,361.74, the only question remaining is how much plaintiff should be charged for the reasonable rental value of the premises. The building was built some 35 years ago and when plaintiff took possession it was badly in need of repairs, witness Rocke estimating that it would cost from $6,000 to $10,000 to put the property in condition where it would be worth $300 a month. The building was not modern in any sense. There were no private baths and only six general bath-rooms. It had been wired for electric lighting, but there were no fixtures, only drop cords. The flooring was six inch, and badly warped. The doors and windows needed refitting. In fact, the entire premises were in a state of dilapidation. In its then condition one witness put its rental value at from $50 to $100 a month, another at $150. These witnesses had examined the premises at the time and were well qualified. Defendants called one witness who testified to a rental value of from $250 to $350 a month, but he had not made an examination of the building and admitted he did not know "a whole lot about it." Other evidence consists of the offer of Poore of $310 for a three to five-year lease and the offer of Rocke of $300 for a similar lease, provided extensive repairs were made. A further fact for consideration is that the net receipts of plaintiff for the first 13 months of her possession were $1,253.64 without any allowance for rent; also, the net receipts from November 25, 1918, to November 1, 1923, while the Rockes were in possession, were $12,522.83, without any allowance for rent, repairs or management, but including board and lodging of three persons. The Rockes were experienced lodging-house keepers and the results of their management furnish persuasive evidence of what the premises were capable of producing in their then condition after plaintiff had expended over $3,000 for repairs, and serve to indicate what rent could be paid for the use of the building for the purposes to which it was adapted. The average monthly net receipts under the Rocke management were $212.25. To this must be added $40 for their lodging

and $20 for lodging their niece who assisted them, also the board of the three persons at $1.25 a day each; adding these together the net receipts from the premises would be $384.75. If we allow the niece $25 and the Rockes $100 a month for services, in addition to their board and lodging, it would leave $259.75 out of which to pay rent and repairs. The lower court found that the Rockes were entitled to $2,000 a year for management, and their assistant $80 a month. There was no evidence other than the two offers above referred to, with their accompanying conditions, that any such sum as $300 could have been procured. It should also be considered that the situation made it practically impossible to grant a long-term lease which would enable the tenant to amortize expenditures for repairs, and the building therefore had to be leased as it stood.

From this evidence we have concluded that $150 a month was the outside figure which could have been procured by the exercise of reasonable diligence on the part of the plaintiff, and that she should be charged with that amount. The claim of defendants that the premises were worth $300 a month seems to be the legitimate offspring of the extravagant allegations of the answer that they were worth $1,000 a month, that the mortgage had been fully paid and should be canceled, and title quieted in defendants. Upon the whole record we conclude that the calculation of the amount due plaintiff should start with the decree of September 24, 1917, that she should be credited with the amount of repairs made and taxes and insurance paid, and charged with $150 a month rent from September 1, 1916, payable monthly, and we have brought the account down to July 1, 1926, as follows:

|  |  | Dr. |
|---|---|---|
| Sept. 24, 1917, decree ........................................$ | 39,806.81 |
| July 1, 1926, Interest at 10% to date.............. | 34,897.36 |
| July 1, 1926, taxes paid ($8,300.60) with interest at 10% from the several dates of payment.......................... | 13,039.45 |
| July 1, 1926, insurance ($2,672.60) with in- | |

Hays v. Christiansen.

|  |  |  |  |  |
|---|---|---|---|---|
|  |  | terest at 10% from the several dates of payment.......................... |  | 4,994.16 |
| July | 1, 1926, | repairs ($4,361.75) with interest at 7% from their several dates ----------------------------------- |  | 6,456.03 Cr. |
| July | 1, 1926, | to rent 118 months at $150 .....................$ | 17,700.00 |  |
| July | 1, 1926, | 10% interest thereon with monthly rents, 7,021 months at $1.25 a month...... | 8,776.25 |  |
| July | 1, 1926, | balance due............... | 72,717.56 |  |
|  |  |  | $99,193.81 | $99,193.81 |

We have allowed only 7 per cent. upon the amount expended for repairs because they were not provided for in the mortgage. We have not allowed plaintiff anything for management, deeming the penalty of 10 per cent. interest an equitable offset. These figures charge plaintiff with about $6,500 more than her actual net receipts from the building. We conclude that the defendants are entitled to redeem by paying the amount due as above stated and that they should be allowed thirty days for that purpose.

It is therefore ordered that the decree of the district court be reversed and the court instructed to enter a decree in conformity with this opinion, and if redemption be not made within the time limited, to enter an order confirming the sale.

REVERSED.