HANNAH BRYANT, APPELLEE, V. MODERN WOODMEN OF AMERICA, APPELLANT.

FILED MARCH 28, 1910.    No. 15,962.

1. Witnesses: PRIVILEGED COMMUNICATIONS. A statement of fact or opinion expressed by a physician to a patient in the course of a professional visit, based upon a relation of facts by the patient, or upon a physical examination by the physician, is a part of the same transaction, and is as much privileged as the facts or statements of the patient on which it is based.

2. ———: ———: WAIVER. A waiver of the privilege or benefit of the protecting statute is a waiver of the disqualification of the physician as to the whole transaction, and not as to a part of it only.

3. Insurance: FALSE REPRESENTATIONS: EVIDENCE. Where an issue is made as to false representation in an application for life insurance as to good health and freedom from disease, knowledge by the applicant at the time that he is or has been afflicted with tuberculosis of the lungs or tuberculosis of the bones of the wrist is a material matter, which the defendant is entitled to prove by any competent evidence.

4. ———: ———: EFFECT. "An incorrect or untrue answer in an application for life insurance in reference to matters of opinion or judgment will not avoid the policy if made in good faith and

without intention to deceive," but "an untrue answer in an application for life insurance in regard to matters which are shown to be within the knowledge of the applicant and are material to the risk will avoid the policy." *Royal Neighbors of America v. Wallace*, 73 Neb. 409.

5. ———: ———: MATERIALITY. Evidence that the applicant when seeking medical advice was told by his physician that he was suffering from tuberculosis is material upon the issue whether the statements in the application were made honestly and in good faith, and is admissible when the privilege is waived.

6. Evidence: ADMISSIBILITY. In order to avoid needless expense and delay, where evidence is in the form of depositions, and the court upon inspection can see that, while the form of question may be technically objectionable, yet the answer furnishes proper evidence, it would facilitate the administration of justice to heed substance rather than form, overrule the objection, and admit the testimony.

7. Trial: INSTRUCTIONS. Instructions which state conflicting propositions of law and tend to confuse the jury are erroneous.

8. ———: ———. An instruction which withdraws from a jury all defenses but one, where there is evidence tending to prove another defense pleaded, is erroneous.

9. ———: ———. Other instructions examined and criticised.

APPEAL from the district court for Madison county: ANSON A. WELCH, JUDGE. *Reversed.*

*Benjamin D. Smith, Willis E. Reed* and *Thomas S. Allen,* for appellant.

*William V. Allen* and *William L. Dowling, contra.*

LETTON, J.

Action upon a benefit certificate issued by the defendant, a fraternal beneficiary association. No question is made as to the issuance of the certificate and the death of the assured, but the payment is resisted upon the ground that the application, certificate and by-laws constitute the contract, and that the assured made false answers to certain questions in the application which were material to the risk. The questions and answers

referred to are as follows: "14. (a) Have you, within the last seven years, been treated by or consulted any person, physician or physicians in regard to personal ailment? No. * * * 17. Are you now of sound body, mind, and health, and free from disease or injury, of good moral character and exemplary habits? Yes. * * * 33. (a) Have you ever had any disease of the following named organs, or any of the following named diseases or symptoms? · Consumption. No. Habitual coughing. No. Lungs. No." The reply alleges that the assured made general statements to the examining physician, who was the agent of defendant, from which statements the answers were written out in the application by the medical examiner, and that the same are not the answers made by the assured, and that the answers ·made to the physician were merely expressions of opinion, and were not intended as warranties.

The assured, on January 16, 1907, when he made the application, was a little over 30 years of age. In August, 1904 or 1905 (the evidence does not clearly indicate which year), he sprained his wrist while driving, and soon after hurt it again. His widow testifies that in September, 1905, he saw a physician in regard to this injury, and that in May, 1906, he went to Omaha to be operated upon.

In the application the following waiver of privilege is found: "I hereby expressly waive for myself and my beneficiary or beneficiaries the privilege or benefits of any and all laws which are now or may be hereafter in force making incompetent the testimony of or disqualifying any physician from testifying concerning any information obtained by him in a professional capacity. And I further expressly waive for myself and my beneficiary or beneficiaries the provision of any law, and the statutes of any state, now in force or that hereafter may be enacted, that would, in the absence of this agreement, modify or conflict with my contract with this society, or cause it to be construed in any way contrary to its express lan-

guage." This was treated by the trial court as an effective waiver of the privilege of the assured as to any communications by him to the examining physician, but, as will be hereafter shown, not as a complete waiver of all that was said by patient and physician at the time of the physical examination.

Dr. Long testifies that about January 25, 1905, he was consulted by the assured with reference to the injury to his wrist, and that, upon making an ocular and tactual examination, he diagnosed the condition as tuberculosis of the bones of the wrist joint. He was then asked whether he told Mr. Bryant at that time what he was suffering with. The plaintiff objected to the question "as incompetent, irrelevant and immaterial, because no proper foundation has been made, because the relation of physician and client existed at the time, and the communication is privileged and could not be waived by Mr. Bryant in advance." This objection was sustained by the court, to which ruling the defendant excepted. The defendant then offered to prove the fact sought to be elicited, which was objected to, and the objection sustained. The witness then testified that from the examination and diagnosis he then made he was of opinion that tuberculosis must have existed in the system before that time.

Dr. A. P. Condon of Omaha testified that he was a practicing surgeon, that he became acquainted with the assured in June, 1905, that at that time Mr. Bryant had a tubercular inflammation of the wrist joint and carpal bone, that the bones and joints were diseased to such an extent that it became necessary to amputate the arm just above the wrist. His evidence was taken by deposition, and the record shows the following: "Q. 23. You may state now whether or not at the time you made this examination, or at the time you performed the operation, you explained to Mr. Bryant the nature of his ailment? A. I don't remember, but I do always explain to my patients the nature of their ailments. Q. 24. And what is

your best judgment as to whether or not you told him
at this time that he had tuberculosis of the wrist?  A.
I am sure I did, because I used that as an argument for
the amputation." Plaintiff objected to all that part of
the answer to question 23 after the words, "I don't re-
member", as incompetent, irrelevant and immaterial, not
a statement of facts, which objection was sustained.  Ob-
jection was also made to question 24, "because the same
is incompetent, irrelevant and immaterial, and no foun-
dation laid", which objection was sustained.  Defendant
excepted to both rulings.

Dr. Bush testified that about March 10, 1907, he was
consulted by the assured at Sumner, Nebraska, and that
at that time he was suffering from tuberculosis of the
lungs.    Dr. Jones testifies that he was present at the
amputation of the arm, that the disease was tuberculosis
of the wrist, that on March 23, 1907, he was called to
attend Mr. Bryant, that he then had acute miliary tuber-
culosis of the lungs.  The court, holding the view that the
applicant had by the written waiver in the application
waived the statutory privilege as to confidential communi-
cations to his physician, permitted Dr. Smart to testify
that he had been consulted by Bryant one or two years
before his death, and that he then diagnosed his ailment
as tuberculosis of the lungs, but excluded testimony
offered that the witness told Bryant at that time that he
had this disease.  The court said in this connection: "I
will state, so far as that waiver is concerned, it does not
require you to divulge any communication which you
made to your patient, simply information which you re-
ceived of the condition in which you found him; and, to
the extent of any communication which you made to him,
it would be a privileged communication which has not
been waived." This seems to have been the reason for the
ruling as to all evidence of like nature.

The evidence of some of the physicians is to the effect
that germs of tuberculosis are present in about 78 per
cent. of people generally, that a person may carry these

germs all his life and die in the ordinary course of nature, and not from tuberculosis. The testimony of Dr. Baker, examining physician of the defendant, is that at the time the examination of Bryant was made by him it would have been impossible to determine whether or not he was infected with tuberculosis without making a microscopical examination of some of the tissues, and that from all external appearance he was in perfect health. He also testifies that, had he known the facts as to the former tuberculous condition, he would have rejected the application. The testimony further shows that about the 20th of February, 1907, the assured moved from Madison to Sumner, Nebraska, that the weather was at the time exceedingly inclement, snowy and cold, that he then caught cold, was hoarse, and from that time on suffered from a severe cold in the throat and lungs, that he consulted physicians in March for this trouble, and that he died on the 24th of May thereafter from acute tuberculosis of the lungs.

The application shows the following as to the amputation: "16. (a) Have you ever had any local disease, personal injury, or serious illness? Yes. (b) If so, explain fully, giving dates. Had hand amputated 2 years ago because of an injury. (c) Was recovery complete? Yes. * * * 30. (a) Have you ever undergone a surgical operation? Yes. (b) If so, when? June, 1904. (c) Give character of operation. Amputation of hand. (d) Was recovery complete? Yes. (e) Give names and addresses of attending surgeons and physicians. A. P. Condon, Omaha." And also a repetition of the same information on another page.

The defendant contends, first, that the court erred in refusing to permit the physicians who attended Bryant prior to the time he became a member of the society to state whether or not each told him at the time of the consultation that he had tuberculosis; and, second, that the court erred in giving and refusing certain instructions.

As to the refusal to permit evidence that Bryant was

told by his physicians that he had tuberculosis: The offered evidence by Dr. Condon to the effect that he told Bryant at the time of the amputation of his hand that he was suffering from tuberculosis of·the wrist was apparently excluded upon the same theory as that of the other doctors, that the communication from the physician to the patient was a privileged one, and had not been waived. We cannot take the same view as the learned trial court. A statement of fact or opinion expressed by a physician to a patient in the course of a professional visit, based upon a relation of facts by the patient, or upon a physical examination by the physician, is as much a privileged communication as the facts or statements upon which it is based. It is a part of the same transaction, and if the statute excludes the facts disclosed by the patient, it must equally exclude the statements and the opinions, expressed or unexpressed, of the physician, if its protection is to be of any avail. If the physician is permitted to disclose what he said to the patient, the patient's privilege to prevent the disclosure of a communication by him to the physician or the result of an examination would be of little use, for by indirection a disclosure of the nature of the disease would in many instances be made. *Sovereign Camp, W. O. W., v. Grandon,* 64 Neb. 39; 4 Wigmore, Evidence, sec. 2384, and note; *Jones v. Preferred Bankers Life Assurance Co.,* 120 Mich. 211; *Nelson v. Nederland Life Ins. Co.,* 110 Ia. 600; *Smart v. Kansas City,* 208 Mo. 162, 14 L. R. A. n. s. 565. A waiver of the privilege or benefit of the protecting statute is a waiver of the disqualification of the physician as to the whole· transaction, and not as to a part of it only. In view of the statements in the application, the knowledge of his condition by the applicant was a material fact in the case, and one which the defendant was entitled to prove by any competent evidence within its reach. If the applicant had no knowledge of the fact that his lungs were afflicted with tuberculosis or that it was tubercular disease of the bones of the wrist that rendered

necessary the amputation of his arm, and the answers to the questions in the application were not made as absolute statements of facts, but as matters of belief or opinion and as to which he might be honestly mistaken, then, under the former decisions of this court, the answers were mere representations, and his beneficiary might recover if they were made honestly and in good faith. *Kettenbach v. Omaha Life Ass'n,* 49 Neb. 842; *Modern Woodmen Accident Ass'n v. Shryock,* 54 Neb. 250; *Royal Neighbors of America v. Wallace,* 64 Neb. 330, 66 Neb. 543; *Bankers Union of the World v. Mixon,* 74 Neb. 36; *Modern Woodmen of America v. Wilson,* 76 Neb. 344; *Reppond v. National Life Ins. Co.,* 100 Tex. 519, 11 L. R. A. n. s. 981, and note.

If the evidence should prove, however, that he had consulted reputable physicians as to his condition, and that he had been told by them that he was suffering from such an insidious and dangerous disease as tuberculosis at a time so near the time of making the application as to rebut and repel the idea of forgetfulness or good faith on his part, the concealment of such a fact, so material to the risk, and one that, if known, his application would have been rejected, would avoid the contract. *Royal Neighbors of America v. Wallace,* 73 Neb. 409; *Ætna Life Ins. Co. v. Rehlaender,* 68 Neb. 284, and cases cited. In Judge SEDGWICK'S opinion in the *Wallace* case (73 Neb. 409) the distinction is clearly pointed out, and the proper rule announced, to which doctrine we adhere.

The offered evidence would tend to show notice and knowledge by the applicant of the actual facts as to his condition before he made the representations. It was material to the issues, and, since the privilege was waived, was admissible. The two questions above referred to propounded to Dr. Condon were objectionable in form, and the answer to the first, except as to the portion admitted, was properly excluded. However, the evidence was in the form of a deposition, the questions and answers were within the power of inspection by the court,

and, while question 24 was objectionable in form, the answer elicited was pertinent. This being the case, we think the objection should have been overruled and the evidence admitted.

In order to avoid needless expense and delay, where evidence is in the form of depositions, and the court upon inspection can see that, while the form of question may be technically objectionable, yet the answer furnishes proper evidence, it would facilitate the administration of justice to heed substance rather than form, overrule the objection, and admit the testimony. The exclusion of proof tending to show that the assured knew he had been ailing with tuberculosis before he made the application, we think was prejudicially erroneous.

Complaint is made as to the giving and refusal of a number of instructions. Instruction No. 12 is as follows: "You are instructed that in the medical examination, which was a part of said Ellard E. Bryant's application for said benefit certificate, said Ellard E. Bryant's answers disclose that in the month of June, 1904, he had undergone a surgical operation for the amputation of a hand by Dr. A. P. Condon, a surgeon at Omaha, and that if you find from the evidence that the said Ellard E. Bryant had during the seven years immediately preceding the date of making such application had any knowledge that he had any other serious ailment, or had any knowledge of facts which furnish sufficient reason for him to believe that he was or might be at that time, or at any time during the seven years immediately preceding the application, afflicted with any other serious ailment or disease for which he had consulted persons or physicians, other than that for which he had consulted the said A. P. Condon, then his answer 'no' to said question, 'Have you within the last seven years been treated for or consulted any person, physician or physicians in regard to personal ailments?' would not void said benefit certificate." This instruction tells the jury that if Bryant during the seven years preceding the date of making

the application had any knowledge that he had any serious ailment, other than the amputation of the arm, or any knowledge of facts which furnish sufficient reason for him to believe that he was afflicted with any other serious ailment or disease, then his answer in the negative would not void the certificate.  By this instruction the protection to the insurer which notice of former ailments would have given, if the assured had stated that he had consulted other physicians, was entirely taken away, and the question and answer were treated as being wholly immaterial to the risk.  We cannot understand upon what theory this instruction can be upheld.  Whether he had consulted physicians in regard to personal ailments was a proper subject of inquiry.  The instruction is inconsistent with instruction No. 14, which is to the effect that if to the same question the applicant answered "no", and at the same time knew or had sufficient reason to believe that he had been afflicted by a serious ailment, other than that which necessitated the amputation, then the verdict should be for the defendant.  The giving of such conflicting instructions must have confused the jury, and deprived the defendant of a correct statement of law in that behalf.

We are also of opinion that while, as the evidence stands, perhaps it was not erroneous to refuse to give instruction No. 9, requested by the defendant, with respect to the applicant's knowledge that he was afflicted with a fatal disease, the court having excluded the evidence of the physicians tending to show such knowledge, still, if such evidence is offered and received at another trial, an instruction along this line, if the facts warrant it, is one which the defendant is entitled to have given to the jury, if it so requests.  *Royal Neighbors of America v. Wallace,* 73 Neb. 409.

With the exception of instructions Nos. 12 and 14, hereinbefore mentioned, and instruction No. 9, which limits the question of deceit to the camp examining physician, the instructions given by the court upon its own motion seem

fairly to present the issues in the case to the jury. We find no prejudicial error in the refusal to give the other instructions requested by the defendant. We doubt whether the giving of instruction No. 7 at the request of the plaintiff was proper, for the reason that there seems to be no evidence in the record upon which to base the same, and unless further evidence makes it proper it should not be given again. We believe also that instruction No. 8, requested by the plaintiff, should not have been given, because this instruction takes away from the defendant the protection afforded by the questions in the application relative to the applicant having consulted physicians for personal ailments, and specifically directs a verdict for the plaintiff, "unless the defendant shall have proved by a preponderance of the evidence that Ellard E. Bryant, the insured, wilfully misrepresented his condition of health at and before the time such certificate or policy was issued, knowing it to be different from what he stated it to be, or knowing of facts which furnished sufficient reasons for him to believe he was afflicted with some disease." This is not the only material matter in the case, and the defense should not have been so limited. We think it unnecessary to discuss the instructions at greater length, because, since the evidence will probably be different upon a new trial, some of the instructions given at this trial may prove to be inappropriate. The issues in the case are simple. If the evidence does not materially differ from that in this record, save in respect to the reception of the excluded testimony of the doctors, there is no need for long and involved instructions, since the questions of law involved have already been settled by this court.

For the errors pointed out, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.