Mitchell v. Brotherhood of Locomotive Firemen and Enginemen.

Rose, J., not sitting.

---

Alice E. E. Mitchell, appellee, v. Brotherhood of Locomotive Firemen and Enginemen, appellant.

Filed October 18, 1919.   No. 20539.

1. Estoppel: Change of Position. Where a party gives a reason for his conduct and decision  touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold.

2. Insurance: Proof of Death: Waiver. Where, upon proof of death being furnished to a fraternal beneficiary association, the proofs not being in strict conformity with the rules and by-laws of the order, no objection was made to the form of proof, and the claimant was informed that the association "cannot make payment until furnished with positive proof of death," and that, "upon receipt of such proof of death, payment of the claim will be immediately made," *held,* that strict conformity of the proof to the requirements of the by-laws was waived, and the only thing necessary to establish liability was "positive proof of death."

3. ———: ———. A by-law of a fraternal beneficiary association providing that the association "shall only be liable for the payment of a death claim when there is positive proof of death," the words "positive proof" must be held to mean proof as positive as the circumstances reasonably afford, and positive enough to satisfy the judgment of reasonable men. The production of the dead body of the deceased is not indispensable.

Mitchell v. Brotherhood of Locomotive Firemen and Enginemen.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE. *Affirmed.*

*Vinsonhaler, McGuckin & Caldwell,* for appellant.

*James E. Rait, contra.*

LETTON, J.

The husband of the plaintiff held a life insurance certificate in the defendant association. He was a night watchman upon a railroad bridge then being constructed at Omaha across the Missouri river. In going to work it was usual for him to cross from the old bridge to the new bridge by means of a plank in place at a certain point. He was last seen about 7:30 on the night of October 30, 1916, when he told a companion he was going to an engine on the bridge to eat his lunch. His lunch was found next morning uneaten. His hat was found upon some lattice work below the old bridge near the plank, but his body was never recovered, although a thorough search was made. Mrs. Mitchell presented a claim to the defendant for the amount of the certificate, and accompanied it with a copy of the report made by a special master in an action she had brought in the United States district court, against the corporation by whom he was employed, to recover compensation. This report stated the facts very fully, and found that Mitchell was dead. In the letter acknowledging the receipt of the claim and report, defendant, by its general secretary and treasurer, quoted a portion of its laws with reference to "Disappearance of Members," and stated that it would not pay the amount due upon the certificate until it was "furnished with positive proof of death," and further stated, "upon receipt of such proof of death, payment of the claim will be immediately made." Plaintiff then began suit. The petition did not set out a copy of the certificate, nor state its date, alleging it was in the hands of defendant. Defendant answered, admitting the issuance of a certificate, and that it was in full

force and effect on 'the 30th day of October, 1916, and pleaded that proofs of death had not been furnished as required by the by-laws, that the policy was not payable until such proof was furnished, and denying the other allegations of the petition.

At the time of the trial the defendant filed an amended answer, denying that the policy was in full force and effect, alleging that it was void on account of certain false statements made by the deceased as to his physical condition in his application for insurance made January 5, 1910, on which the policy was issued, and setting up failure to furnish proof of death. The reply denies that deceased made application for a certificate on January 5, 1910, or made any false or fraudulent statements; alleges that he had been a member for many years prior to that time, and had paid all dues and assessments, denies that he was ever suspended or expelled, or that he ever executed an application for reinstatement. At the trial it was stipulated that deceased joined the defendant order many years prior to September, 1910.

All the facts with reference to the membership of deceased in this order and as to his payment or nonpayment of assessments prior to January 5, 1910, are neither pleaded nor proved. Plaintiff relies upon membership begun in 1905. Defendant asserts no membership before 1910.

Plaintiff was permitted by this court to file an amended reply alleging waiver and estoppel by reason of its promise, before the action was begun, to pay plaintiff's claim as soon as proofs of death were furnished.

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law." *Railway Co. v. McCarthy,* 96 U. S. 258. *Ballou*

*v. Sherwood*, 32 Neb. 666; *Frenzer v. Dufrene*, 58 Neb. 432; *State v. County Commissioners*, 60 Neb. 566; *Hixson Map Co. v. Nebraska Post Co.*, 5 Neb. (Unof.) 388; *First State Bank v. Stephens Bros.*, 74 Neb. 616.

Defendant knew of the statements made in the application. It was also advised, before it promised to pay the loss when proofs were furnished, of the fact a witness had testified before a special master in United States district court, that decedent had received an injury in a railroad wreck on December 5, 1905, that he was operated upon, a portion of his skull removed, and a silver plate placed over the opening, and had since suffered from dizzy spells and epilepsy. This was sufficient notice of a probable defense, and if it desired to assert it, it should not have put its refusal to pay upon the other ground only. We are of the opinion that defendant is estopped to defend upon the ground first set up in the amended answer.

The finding of the jury as to the fact of death seems to be supported by the evidence. There is proof that there were piling and timbers in the river under the place where deceased's hat was found, and that it was 65 feet from the floor of the bridge to the surface of the water. It is also shown that a young woman had been drowned near the bridge a few days before, and that neither her body nor that of Mitchell were ever found, though diving, dynamiting the river, using grappling irons and other means were resorted to. It is a well-known fact in the locality that bodies of persons drowned in the Missouri river are not uncommonly never recovered. The defendant offered to pay if "positive proof" was furnished. This must be held to mean proof as positive as the circumstances reasonably afford, and positive enough to satisfy the judgment of reasonable men. Otherwise, where, as in convulsions of nature, such as floods, tornadoes and tidal waves, or in catastrophes such as conflagrations or explosions, where it is very frequently impossible to furnish abso-

lute proof of death by the production of the body, the insurer might escape a just liability.

The proof furnished was not in accordance with the rules of the society, but it was impossible to make such proof. In the letter referred to, no objection is made as to the form of the proof furnished, but only as to the fact of it not being "positive." It is the quantum of proof, and not its form, that is criticized. The plain inference is that the requirement that the proofs be executed in accordance with the laws of the defendant was waived, if it was sufficient as to the fact of death. The jury was satisfied upon this point, and there is sufficient evidence to sustain its finding, though it might almost as well have found to the contrary.

Upon the whole record we find no prejudicial error. .

AFFIRMED.