ANNE K. YATES, APPELLANT, v. NEW ENGLAND MUTUAL
LIFE INSURANCE COMPANY, APPELLEE.

FILED JUNE 26, 1928.  No. 25228.

*Frank C. Yates* and *Nelson C. Pratt,* for appellant.

*C. J. Baird* and *L. C. Hupp, contra.*

Heard before GOSS, C. J., DEAN, THOMPSON, EBERLY and HOWELL, JJ., and CHASE, District Judge.

HOWELL, J.

This is an appeal from a judgment of the district court for Douglas county, dismissing plaintiff's cause of action. Appellant was plaintiff, and the parties will hereafter be referred to as plaintiff and company.

. The action was based upon a policy of insurance for $2,000, issued June 14, 1913, to John B. Lindsey, husband of plaintiff, she being named as beneficiary.

At the close of plaintiff's testimony, the company moved for a directed verdict. The court sustained that motion, discharged the jury and ordered plaintiff's action dismissed.

The pleadings have given us some trouble, and we deem it necessary to analyze them by paragraphs.

Paragraph 1 of the petition alleges the corporate entity of the company; the issuance of the policy to John B. Lindsey on June 14, 1913, a copy of the policy is attached to the petition, and made a part thereof, and its acceptance by Lindsey, *"now deceased,"* at Omaha. Paragraph 1 of the answer admits those allegations.

Paragraph 2 of the petition avers that Lindsey resided in Omaha and paid all dues required to keep the insurance

in force to and including January 14, 1915. Pargraph 2 of the answer admits the residence of Lindsey, concedes the insurance was in force to January 14, 1914, and denies payment of dues beyond that date.

Paragraph 3 of the petition alleges that, about April 13, 1914, Lindsey was employed and resided in Omaha, disappeared at that time and has not since been heard from. Paragraph 3 of the answer denies those allegations for want of sufficient information, to admit them. Having admitted Lindsey's death, in paragraph 1, there is little, if anything, left of paragraphs 3 of the petition and answer.

Paragraph 4 of the petition alleges the plaintiff was the wife of Lindsey; vigilant efforts to find him; inability to trace him; his absence for seven years, and his death about April 13, 1914. Paragraph 4 of the answer states lack of information to admit, and therefore denies, those allegations. Affirmative matters of defense are alleged: (1) Lindsey died, if dead, "by his own hand or act" within one year from the date of the policy; (2) no proof was furnished of the death of Lindsey; and (3) a tender of premiums paid.

The only tender made was the offer in the answer. It was not actually made or kept good, and was offered only "in case proof should be furnished of his death as alleged in the petition." There was no allegation in the petition that Lindsey died by his own hand, or act, or suicided. As stated before, his death was admitted, and it only remained to be shown when it occurred, and not necessarily how it occurred. The denial was, death did not occur about April 13, 1914. By turning to paragraph 5 of the answer, it will be observed the company alleged the policy "had not been in force" one year, "and the first year's premium had not been paid," by reason of which, "said policy lapsed."

Paragraph 5 of the petition alleges the policy was in force at "the date of death of said John B. Lindsey;" plaintiff advised the company of the death and offered to make proof, and had submitted proof thereof; demanded payment, and the company "failed, refused and declined" to

pay. Paragraph 5 of the answer denied the foregoing, and alleged the issuance of the policy on June 14, 1913, "in consideration of the application" for the insurance, "and of the payment of the advance annual premium of $55 together with the sum of $12.04 for temporary insurance to January 14, 1914," the payment of future like annual premiums, and "defendant agreed to pay, upon proof of his death, to his wife, Anne K. Lindsey, the sum of $2,000;" except the $12.04 for temporary insurance to January 14, 1914, the required premiums were not paid; in case of nonpayment of any premium when due within the first three years, the policy shall cease and all rights forfeited; that the policy had not been in force for a year at the time of the alleged death, and the first year's premium had not been paid, because of which the policy lapsed; "that more than five years have elapsed since the alleged cause of action accrued, and the same is barred by the statute of limitations."

Paragraph 6 of the petition and the answer are merely formal, the answer including a general denial.

When the case was called for trial, the company was permitted to amend its answer by interlineation, and plaintiff was given leave to file reply. A jury was at once drawn and the trial proceeded without a reply being actually filed. Thus, the issues were permitted to loosely stand. So far as the record goes, issues the reply might have presented, or that were assumed, were not limited. No objection was made to any testimony as not being within issues. The field was open to plaintiff so long as the company acquiesced, as to any issue available within the proper functions of a reply, and the evidence properly received.

Pruned to crux, the petition declares that plaintiff's husband died about April 13, 1914, having insurance with the company for $2,000 in full force, evidenced by a policy issued June 14, 1913, naming her as beneficiary, and the company owed her the money.

The company admitted such a policy was issued, that insured was dead, and it had not paid the policy.

To avoid payment, the company set up four grounds of defense; (1) The policy lapsed for nonpayment of premiums before insured died. (2) Insured committed suicide. (3) No proof of death had ever been furnished the company. (4) The claim was barred by the statute of limitations. As we read the evidence and the pleadings, there is but one controlling ultimate question to be determined, and that is: Did the insured die within one year from the date of the policy, and before it lapsed for nonpayment of premiums?

At the trial two letters were received in evidence, which were objected to by the company for the reason they were "incompetent, irrelevant, immaterial, no foundation laid." No objection was made because they were not within the issues. The trial court was not asked to, nor did it, rule on that question. One letter was written May 3, 1921, by plaintiff's attorney to the company, saying: "We * * * hereby make demand upon you for the payment of the benefits under this policy. You will please prepare proofs of death and send same to us to be filled out. This is to inform you that John B. Lindsey disappeared on the 13th day of April, 1914; that he has not been seen or heard of, and the circumstances surrounding his disappearance are such as to be very strongly presumptive of his death. * * * You will please give some attention to this matter within the next ten days, as we have been authorized by our client that, unless action is taken by the company for the payment of the benefits under this policy, to immediately institute suit." The other letter was written May 16, 1921, by the company to the attorney, saying: "Replying to your letter of May 3, company advises us that policy No. 264010, on the life of John B. Lindsey, lapsed for nonpayment of the six months' note of $14, given in part payment of the first premium and became due July 14, 1914, and has no value."

This action was commenced December 7, 1921. At the time the company wrote the letter of May 16, 1921, every defense it sought to interpose by answer was complete, if

good, and known to it, including limitations. In *Mitchell v. Brotherhood of Locomotive Firemen and Enginemen,* 103 Neb. 791, it is said:

"Defendant knew of the statements made in the application. It was also advised, before it promised to pay the loss when proofs were furnished, of the fact a witness had testified before a special master in United States district court, that decedent had received an injury in a railroad wreck on December 5, 1905, that he was operated upon, a portion of his skull removed, and a silver plate placed over the opening, and had since suffered from dizzy spells and epilepsy. This was sufficient notice of a probable defense, and if it desired to assert it, it should not have put its refusal to pay upon the other ground only. We are of the opinion that defendant is estopped to defend upon the ground set up in the amended answer."

Had the company furnished the blanks for proofs as requested, it would have learned all the facts. Its reply to plaintiff was, in effect, the company is not concerned about how the insured died or when he died, because the policy lapsed for nonpayment of the premium note which "became due July 14, 1914." Whether the reason was a good one, or bad, it precluded itself from setting up another after litigation started.

*Powers v. Bohuslav,* 84 Neb. 179, Good, C., now an honored member of this court, was dealing with a suit for commissions on a brokerage contract for the sale of land. The broker secured a purchaser, and the landowner refused to convey the land, giving a certain reason therefor. When sued, he set up another and different defense. On page 184, the court said: "Defendant, having failed to object upon the ground that the purchaser was willing to pay all cash, instead of deferring a part of the purchase price, until after litigation was instituted, will not now be heard to make such defense." In that case, the reply was a general denial, and no estoppel was pleaded.

In *Hilmer v. Western Travelers Accident Ass'n,* 86 Neb. 285, 291, this court, speaking through Root, J., with ref-

erence to another case in this court, in which the insurance company denied the policy was in force, said: "The company also urged a defense based upon an agreement in the policy. Manifestly it was not just to permit the company to insist that the policy was void for one purpose and valid for another." Further in the opinion, on page 292, it was said: "But, if a person before suit refuses to satisfy a demand for particular reasons stated by him to the plaintiff, he will not be permitted after litigation has commenced to change his ground and defend upon entirely different considerations."

Strictly speaking, inconsistencies of the kind we are talking about are not to be said to fall under estoppel or election. They partake of both, but it seems to be a rule, of procedure based upon manifest justice. 10 R. C. L. 698, sec. 26.

The letters were material and relevant to issues before the court for other purposes than estoppel. The proper rule, in such case, is well stated in *Hirsch Rolling Mill Co. v. Milwaukee & F. R. V. R. Co.*, 165 Wis. 220, in these words: "However, if the facts showing the estoppel are within the issues made by the pleadings and the evidence showing the estoppel is admissible for any purpose thereunder, it is not necessary that the estoppel should be specially pleaded." In view of the fact that the instant case was tried without a reply as though one was filed, and that the two letters were in evidence on other issues, it is rather technical to hold plaintiff to strict rules of pleading. The facts, being properly before the court, should not be ignored. We have recently held, in *Northwest Ready Roofing Co. v. Antes, ante,* p. 121, that technicalities will not be permitted to work injustice.

What has been said disposes of failure to furnish the company with proofs of death. In addition, however, it may be said, a total denial of liability under the policy automatically disrupts that defense.

The next defense urged is suicide.

The policy, a copy of which is attached to the petition,

contained two clauses, in the order copied, as follows: (1) "If the insured, whether sane or insane, shall die by his own hand, or act, within one year from the date hereof, this policy shall be void and shall have no value; but in such event the company will return the premium paid." (2) "After one year from the date of issue, this policy shall be incontestable except for nonpayment of premiums."

Preliminary to discussing these provisions, attention is called to the last sentence in paragraph 4 of the company's answer, which reads: "Further answering, tenders a return to the plaintiff of the premium paid in case proof should be furnished of his death as alleged in the petition."

Aside from the fact that the tender pleaded is not unconditional, depending upon the furnishing of proofs of death which the company had waived, it was conceded at the oral argument that no actual tender had been made. Much has been said in argument about inconsistencies in the answer. We do not care to discuss that point. We will assume the several defenses have been sufficiently pleaded. The company is in no position to claim suicide, since it has at all times denied the proof was sufficient to show death. From its standpoint, it cannot claim, on this appeal, the benefits of the suicide clause. It obtained the decision of the trial court on other grounds and has not itself appealed.

The suicide and incontestable clauses in the policy must be construed together. The suicide clause is limited to one year. The incontestable clause is so plain that it is not open to construction. It presents a matter of simple arithmetic. Take the date of the issuance of the policy from the date of the time the company enters a contest, and the difference will show whether it is one, more, or less than one year.

The company wrote the contract and sold the insurance on its own terms. It was free to limit or eliminate time for contesting the policy. We are not concerned with the meaning of the word "contest," since the company at

no time questioned the policy by notice, suit, or otherwise, until May 16, 1921. It is no answer to say the company was not sued nor claim made within one year. If it desired to contest, it must have done so within one year. The company has no right to require an insured, or beneficiary, to assert a claim at such time as will benefit it, or to sue in time for it to answer within the year.

It has been contended in other cases that incontestable causes do not relate to deaths occurring during the restricted period, and that it is only when insured dies thereafter that the obligations of the policy become absolute. This is answered in *Mutual Life Ins. Co. v. Hurni Packing Co.*, 263 U. S. 167, 176: "The argument is ingenious but fallacious, since it ignores the fundamental purpose of all simple life insurance, which is not to enrich the insured but to secure the beneficiary, who has, therefore, a real, albeit sometimes only a contingent, interest in the policy. It is true, as counsel for petitioner contends, that the contract is with the insured and not with the beneficiary, but, nevertheless, it is for the use of the beneficiary and there is no reason to say that the incontestability clause is not meant for his benefit as well as for the benefit of the insured. It is for the benefit of the insured during his lifetime and upon his death immediately inures to the benefit of the beneficiary. * * * 'The incontestable clause in a policy of insurance inures to the benefit of the beneficiary after the death of the insured as much as it inures to the benefit of the insured himself during his lifetime. The rights of the parties under such an incontestable clause as the one contained in this contract do not become fixed at the date of the death of the insured.' In order to give the clause the meaning which the petitioner ascribes to it, it would be necessary to supply words which it does not at present contain. The provision plainly is that the policy shall be incontestable upon the simple condition that two years shall have elapsed from its date of issue; not that it shall be incontestable after two years if the insured shall live, but incontestable

without qualification and in any event." Further on in the opinion, it was said: "Dealing alone with the provision here under review, we are constrained to hold that it admits of no other interpretation than that the policy became incontestable upon the sole condition that two years had elapsed." In that case, the contestable period was exceeded by only one day, when the insurance company took the first action to avail itself of protection.

The *Hurni* case was followed in *Great Southern Life Ins. Co. v. Russ,* 14 Fed. (2d) 27, where it is said the following are not open to debate: "(1) That the incontestable clause is valid: * * * (2) That the clause is to be construed liberally, and as covering false representations and fraud on the part of the insured: * * * (3) That, where the policy provides that it shall be incontestable after stated time from 'date of issue,' the time for contest begins to run from the date of the policy. * * * (4) That the clause inures to the beneficiary of the policy and applies even where the period elapses after the death of the insured." Each foregoing proposition is fortified with many citations. It was held an answer, filed after the period stated for contest in an action instituted prior thereto, was too late, did not relate back and stated no defense.

Why should the law not be such? The contract was written and sold by and on the company's own terms, at a price it fixed. It had the benefit of the premium and, in refusing to pay, asks the courts to give it relief from its own solemn engagements. It had the right to contract itself into a pocket and, having made the sale, should be required to respect and fulfil its part. The company's counsel claim that, if insured suicides within a stated time fixed in the policy, the company will not be held liable, and cite *Miller v. National Council, K. & L. of S.,* 109 Neb. 199, and *Nebraska Transfer Co. v. Chicago, B. & Q. R. Co.,* 90 Neb. 488. The latter case does not touch the question. The *Miller* case relates to a by-law limiting liability to one-fifth of the contract in the event of suicide within

two years, has nothing to do with an incontestable clause and is not in point.

Without casting doubt upon the foregoing, there is the other reason that the company is precluded from asserting suicide as a defense. It denied liability solely on the lapsing of the policy. What we have said as to the defense of the statute of limitations applies with equal force to suicide.

This leaves the only defense open to the company. That Lindsey was dead when this action was instituted is admitted. Whether the policy had lapsed when he died is a question of fact. Whether he died by his own hand, or act, is immaterial except to determine whether he died, as alleged in plaintiff's petition, about April 13, 1914. We are not impressed that the evidence was sufficient to go to the jury on death from tuberculosis, but do not foreclose further proof on that issue, if there be any. We think, and it was frankly so conceded by counsel for the company at oral argument, the evidence is sufficient to call for a jury determination on the questions: When did the insured die? and, was the policy then in force? In withdrawing those questions from the jury, the learned trial judge was in error.

The second headnote in *McLaughlin v. Sovereign Camp, W. O. W.*, 97 Neb. 71, cited by company's counsel, stated the rule that, after seven years, an absentee is presumed dead, but there is no presumption that death occurred at any particular time. Notwithstanding the great learning of the judge who presided at the trial of this case in the district court, we cannot dissuade ourselves from a conviction that the judgment is erroneous.

We have examined, with great care, the propositions of law presented by counsel for the company, each of which might well be conceded. They do not deal with the entire situation, and are only applicable when the entire question is segregated into parts.

The judgment of the district court is reversed for a new trial in keeping with this opinion.

REVERSED AND REMANDED.