BETTY O'NEIL, ADMINISTRATRIX OF THE ESTATE OF JAMES F. O'NEIL, DECEASED, APPELLANT, v. UNION NATIONAL LIFE INSURANCE COMPANY, A CORPORATION, APPELLEE.

75 N. W. 2d 739

Filed March 23, 1956. No. 33870.

Baylor, Evnen & Baylor and Davis, Healey, Davies & Wilson, for appellant.

Frank A. Peterson and F. C. Radke, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action at law by Betty O'Neil, administratrix of the estate of James F. O'Neil, deceased, plaintiff and appellant, against the Union National Life Insurance Company, a corporation, defendant and appellee, to recover $2,500, the face amount of a policy of life insurance written on the life of James F. O'Neil, now deceased, interest thereon from the date of his death, and attorney's fees. The case has been previously before this court. An opinion was adopted on the former appearance and it appears as O'Neil v. Union National Life Ins. Co., 148 Neb. 469, 27 N. W. 2d 837. In order that the matters now before the court may be understood it appears necessary to outline herein in considerable detail the proceedings from the commencement of the action in the district court to the present time. For convenience, James F. O'Neil will be referred to as O'Neil.

On August 29, 1944, the plaintiff, as administratrix of the estate of James F. O'Neil, filed a petition in the district court for Lancaster County, Nebraska, in which she alleged that on March 12, 1937, the defendant issued to O'Neil a policy of life insurance by the terms of which the defendant agreed to pay $2,500 to the estate of O'Neil in the event of his death. The policy, by declaration and attachment to the petition as an exhibit, became a part of the petition. In the petition it was alleged that O'Neil died on November 4, 1943. It was further alleged that demand had been made for the $2,500 but that the defendant denied liability for the amount except the sum of $245. The prayer was for $2,500, interest, and attorney's fees.

On April 10, 1945, an amended petition was filed which appears to have been at some time amended by interlineation. It was upon this petition, an answer

thereto, and a reply that the case was tried before it came to this court on the former appeal. To this petition were attached three additional exhibits which were identified as "B," "C," and "D." These were letters from the defendant to the plaintiff.

Two paragraphs of "B" are the following:

"You will notice by the terms of the contract that the death claim under the conditions of your husband's death is the return of the life premiums paid with interest at 5%. In addition to this we will refund the Double Indemnity premiums from the date of enrollment in the armed forces of your husband, on which date the benefits with the Double Indemnity clause are cancelled."

"It appears that the total premiums paid, with interest and the refund of the Double Indemnity premiums will amount to approximately $245.00."

The first paragraph of "C" is the following:

"This file is still pending receipt of your completed claimant statement and your official notification from the War Department of the death of Capt. O'Neill. When these proofs of death are received and approved, your claim will be paid, and we will return the notification of death to you. As we previously stated, the benefits under the policy will be the return of the premiums with interest at 5% per annum."

The body of "D" is as follows:

"Inasmuch as we have not heard from you, we are wondering if there is anything we can do to help you complete your claim as beneficiary under the above policy. We would like to arrange an early payment of the claim and suggest that you let us have the completed from ent (form sent) you in our letter of December 27, 1943, together with such official notices and telegrams as you received notifying you of your husband's death. We will make photostatic copies of these items and they will be returned to you for your further safekeeping."

The answer filed by the defendant contains the following:

"4. Alleges and says that at no time has this defendant denied liability under said policy, but at all times since the delivery thereof to the said James Francis O'Neil, it has recognized same to be in full force and effect."

By the next paragraph of the answer it was asserted that no due proof of death had been supplied as required by the terms of the policy.

As already pointed out there was a reply. In the reply the plaintiff alleged that proofs of loss were furnished and further that the defendant had waived such proof.

In this state from the standpoint of pleadings the case went to trial. A jury was waived.

Upon what issues evidence was presented by the parties on that trial is not known. Whether or not any issue of fact tendered by plaintiff's petition found support in evidence does not appear. The record of that evidence has not been brought here.

The only question which it may be said was presented upon which a determination was made was that of whether or not proof of death had been made within the meaning of the requirements of the policy. The district court adjudged that no such proof had been made and on that ground dismissed the action.

From that adjudication the plaintiff appealed to this court. This court reversed the judgment of the district court on that issue and remanded the cause for further proceedings. In the opinion this court clearly indicated that the only question which was decided was that of whether or not the proof supplied by plaintiff was sufficient as a condition precedent to her right to maintain the action. In the opinion, it was stated: "Consequently, the facts recited in the letter constitute a sufficient proof of death within the provisions of the policy presently before us. This being true, the fur-

nishing of proof of death as a condition precedent to the bringing of suit has been met."

After the determination of this court was made the defendant filed an amended answer to plaintiff's petition in the district court. In this answer, to the extent necessary to set out the allegations thereof, the defendant reiterated its former statements that the policy was in full force and effect. It alleged that the insurance policy contained the following provision: " 'Incontestability. This Policy shall be incontestable after one year from date of issue except for (1) * * * (2) * * * (3) Conditions as to Military Service or Naval Service in time of war. Should the Insured die before attaining the age of thirty-five, from any cause while engaged in Military or Naval Service in time of war or within six months after the termination of such service as a result thereof, the amount payable hereunder shall be limited to the premiums paid together with interest thereon at the rate of five per cent per annum, less any indebtedness thereon to the Company.' " It further alleged that O'Neil was on November 4, 1943, under the age of 35 years; that at that time he was engaged in military service in time of war; and that if he died on November 4, 1943, the beneficiary under the insurance policy was entitled only to the amount of the premiums paid on the policy together with interest at the rate of 5 percent per annum. This amount the defendant offered to pay on proof of death while engaged in military service in time of war.

The plaintiff moved for an order striking the amended answer. This motion was at first sustained, but on reconsideration was overruled.

The plaintiff also moved for judgment on the mandate of this court for $2,500 and interest. This motion was sustained but the order was later vacated and set aside.

After the disposition of numerous incidental and dilatory proceedings not necessary to mention here the plain-

tiff filed a reply to the amended answer. In the reply the plaintiff alleged that the defendant had waived its right to assert the limitation on the amount payable under the policy; that the adjudication of this court was res judicata; that the provision limiting liability, because of the manner of its appearance in the insurance policy, should be disregarded; and that because of lapse of time the incontestability clause could not be made applicable since O'Neil died more than one year after the policy was issued.

Thereafter the case came on for trial to a jury. At the conclusion of the evidence the defendant moved for a directed verdict in its favor. The plaintiff moved for a directed verdict in her favor. The motion of plaintiff was overruled. The motion of defendant was sustained and a verdict, which is the following, was accordingly rendered: "We, the Jury, duly impaneled and sworn in the above entitled cause, do find for the plaintiff and assess the amount of her recovery against defendant in the sum of $445.35." Judgment was rendered on the verdict. An alternative motion for judgment notwithstanding the verdict or for new trial was duly filed by the plaintiff. This motion was overruled. From the order overruling the alternative motion for judgment notwithstanding the verdict or for a new trial and the judgment the plaintiff has appealed.

Six assignments of error appear in plaintiff's brief as grounds for reversal. One of these is separated into three parts. These assignments of error will not be set out here but they will be identified as they are considered later herein.

The first assigned ground for the reversal of the present judgment is that the court erred in failing and refusing to sustain the motion, hereinbefore referred to, to strike the amended answer. The basis of the assignment is that the amended answer asserted a defense entirely different from that relied on by the defendant on the first trial and the former appeal.   .

It is a well-settled rule in this jurisdiction that where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. See, Mitchell v. Brotherhood of Locomotive Firemen & Enginemen, 103 Neb. 791, 174 N. W. 422; McDowell v. Metropolitan Life Ins. Co., 129 Neb. 764, 263 N. W. 145; Serven v. Metropolitan Life Ins Co., 132 Neb. 637, 272 N. W. 922; Farmers Union Fidelity Ins. Co. v. Farmers Union Co-op. Ins. Co., 147 Neb. 1093, 26 N. W. 2d 122; Brown v. Security Mutual Life Ins. Co., 150 Neb. 811, 36 N. W. 2d 251.

On the record before this court however it becomes clear that no basis is found to support and sustain the contention that the defendant at any time changed its defensive position as to liability for a recovery on the insurance policy. As pointed out earlier herein the position of the defendant has been that the policy was in full force and effect; that if the insured lost his life while engaged in military service the liability was for one amount; but if his death came about otherwise the liability was for the face amount of the policy which was $2,500. The amended answer as to this subject did not depart from the contentions made at any time prior thereto.

It must be said therefore that the first assignment of error is without merit.

By the second assignment of error the plaintiff asserts the court erred in refusing to render judgment on the mandate on the former appeal in favor of the plaintiff for the face amount of the policy. The substantial theory of the contention is that all issues upon which a right of recovery depended were tried and a decision rendered thereon in the district court and that the review here was of that decision, and that there was nothing left for the district court to do, since there was a

reversal, but to render judgment in accordance with the prayer of plaintiff's petition.

Neither the record of the proceedings made in the district court nor the opinion of this court sustains this contention.

The judgment of the district court, which appears in the transcript, from which the former appeal was taken discloses unequivocally that the only question decided was that of whether or not the proof of loss which was a condition precedent to the maintenance of action on the policy had been furnished the defendant.

The journal entry so declaring is lengthy and in its entirety will not be repeated here. The final paragraph however is as follows: "The plaintiff's petition is therefore dismissed without prejudice to a new action on compliance with proof of loss requirements."

There is nothing in the former opinion of this court stating directly or inferentially that any other substantial question or issue was being decided. The case was not remanded with any kind or character of direction. This court said only: "The judgment of the district court is reversed and the cause remanded for further proceedings."

The plaintiff has cited no cases the effect of which is to say that a remand under the circumstances which are described herein calls for final judgment in favor of either party on a mandate.

As a proposition of law in support of the contention that she was entitled to judgment on the mandate for $2,500 plaintiff states the following: "After appeal and remand a party may not add or substitute a defense substantially different from those relied on at the original trial." Nebraska cases cited in support are Scott v. Spencer, 44 Neb. 93, 62 N. W. 312; Peterson v. Lincoln County, 92 Neb. 167, 138 N. W. 122, Ann. Cas. 1913E 1309; Gadsden v. Thrush, 72 Neb. 1, 99 N. W. 835.

Only the case of Gadsden v. Thrush, *supra,* has a direct relationship to the subject presented. It holds

that where there is a general remand it is the duty of the district court to exercise its discretion in allowing amendments as to other matters in the further disposition of a case. Other cases which hold to this principle are Sowerwine v. Central Irr. Dist., 91 Neb. 457, 136 N. W. 44; Bohmont v. Moore, 141 Neb. 91, 2 N. W. 2d 599; Piechota v. Rapp, 148 Neb. 442, 27 N. W. 2d 682.

Another stated proposition is: "An insurer raising by its original pleading the defense of failure to furnish due proof of loss may not raise by amended answer a different defense based on grounds of which it had knowledge as being actual or probable." Cited in support are Mitchell v. Brotherhood of Locomotive Firemen & Enginemen, *supra;* Yates v. New England Mutual Life Ins. Co., 117 Neb. 265, 220 N. W. 285; McDowell v. Metropolitan Life Ins. Co., *supra.*

These cases are in point only where a new and different defense is attempted to be asserted. They are not in point in instances where, as here, there has been no change in the defensive position on the merits of the pleaded cause of action.

Another proposition asserted is that where a case has been remanded with general directions to proceed in accordance with an opinion which disposes of all of the issues to be considered on a new trial, a judgment should be entered in favor of the party in whose favor the issues were decided. Cited together with cases from other jurisdictions is Bohmont v. Moore, *supra.*

There can be little doubt that this as an abstract legal principle is sound. However it can have no application here since, as pointed out, the former opinion did not dispose of all of the issues to be considered on a new trial.

The second assignment of error is without merit.

By the third assignment of error the plaintiff effectually contends that she was entitled to a judgment on the evidence before the court on the trial from which this appeal was taken as a matter of law for the reasons

(1) that the incontestability clause which has been quoted herein prohibits a defense under the portion thereof relating to engagement in military service in case of a death occurring more than one year after issuance of the policy, (2) that the position of the caption of the provision relating to death in military service in the policy renders it ineffective, and (3) that the defendant, having the burden of proving that death was occasioned while the insured was engaged in military service, failed to sustain the burden of proof.

Apparently the point of the first proposition is that the policy provision relative to death while engaged in military service, referred to as the war clause, is included as a part of the so-called incontestability provision and is not separately set apart from the one-year provision which applies to other risks.

The cases cited on this proposition do not sustain the contention. The statutes of this state authorize the inclusion in insurance policies of provisions for contestability on the ground that death came about during military service. § 44-502, R. R. S. 1943. This statutory provision was approved in State ex rel. Republic National Life Ins. Co. v. Smrha, 138 Neb. 484, 293 N. W. 372.

The statutory provision relating to death while engaged in military service as a ground of contestability of an insurance policy is combined with the provisions for contestability on other grounds and not separated therefrom in the statute. No reason is apparent why it should be elsewhere than in the incontestability clause of the insurance policy. And if it is clear and unmistakable in its terms, as is true of the one involved here, no reason is apparent why its full content should not be accepted as written.

As to the second point of the third assignment it is true that an insurance policy which is susceptible of more than one interpretation will be given the one most favorable to the insured.

It is also true that where there is no ambiguity in

an insurance policy, the courts will indulge no forced construction against the insured and the policy will be interpreted according to the intention of the parties as expressed in the instrument. Davis v. Aetna Life Ins. Co., 128 Neb. 154, 258 N. W. 58; Shambaugh v. Great Northern Life Ins. Co., 131 Neb. 415, 268 N. W. 288; Parish v. County Fire Ins. Co., 134 Neb. 563, 279 N. W. 170, 126 A. L. R. 703; Pickens v. Maryland Casualty Co., 141 Neb. 105, 2 N. W. 2d 593.

It may not reasonably be said that there was any ambiguity in this war clause or anything which could be misleading as to its content or the placement of the caption of the war clause. The point is without merit.

The third point of the third assignment is directly related to the sixth and last assignment of error. Discussion of it will be deferred until after disposition of the fourth and fifth assignments.

On behalf of the defense a certified copy of the War Department record of the death and cause of death of O'Neil was offered and received in evidence. Objection to it was duly made. By the fifth assignment of error the plaintiff asserts that it was erroneously admitted.

As to this proposition there is a lack of unanimity in the decisions in the various jurisdictions. In Bozicevich v. Kenilworth Mercantile Co., 58 Utah 458, 199 P. 406, 17 A. L. R. 346, the admissibilty of death certificates is upheld. In the opinion cases are cited which contain a like holding. In 5 Wigmore on Evidence (3d ed.), § 1675a, p. 726, the author upholds admissibility. Cases are therein cited which uphold the right.

It appears however that this court has adopted the opposite position. In Omaha & C. B. St. Ry. Co. v. Johnson, 109 Neb. 526, 191 N. W. 691, this court held that the medical certificate required by section 8233, C. S. 1922, was not admissible in evidence as proof of the cause of death. This section has been amended but in particulars not important here. It now appears as

section 71-605, R. S. Supp., 1955. (It was last amended in 1953.) The position taken there was approved in McNaught v. New York Life Ins. Co., 145 Neb. 694, 18 N. W. 2d 56.

It does not appear reasonable to say that a death certificate from the War Department is admissible ab initio in proof of cause of death but that one prepared in conformity with a statute of this state is not.

The conclusion is that it was error to admit the certified copy as evidence of the cause of death, but, as was true in McNaught v. New York Life Ins. Co., *supra,* the error was without prejudice since death and cause of death was otherwise positively and unequivocally proved as will hereinafter appear.

The deposition of Roy A. Murray, Jr., was taken and received in evidence at the trial. The plaintiff filed exceptions to the deposition which were overruled. By the fourth assignment of error the plaintiff challenges the action of the court in overruling the exceptions.

The witness Murray was, at the time O'Neil came to his death, the commanding officer of the Fourth Ranger Battalion in Italy. O'Neil was the commander of a company in the battalion. The purpose of the testimony of this witness was to establish the cause of death of O'Neil.

Certain of the exceptions taken to the deposition were predicated on the proposition that the opinion on the former appeal removed the question of cause of death as an issue on the second trial. In the light of what has been already said herein those exceptions are without merit.

The remainder of the exceptions relate to form of questions, materiality and competency of testimony, admissibility of an exhibit, and foundation for admission of evidence.

It is true that some of the questions propounded may be regarded as somewhat objectionable as to form and foundation or in other words technically objectionable.

It may not be said however that the answers thereto in any instance furnished improper evidence. Applicable to such a situation this court said in the sixth point of the syllabus in Bryant v. Modern Woodmen of America, 86 Neb. 372, 125 N. W. 621, 27 L. R. A. N. S. 326: "In order to avoid needless expense and delay, where evidence is in the form of depositions, and the court upon inspection can see that, while the form of question may be technically objectionable, yet the answer furnishes proper evidence, it would facilitate the administration of justice to heed substance rather than form, overrule the objection, and admit the testimony."

From an examination of the deposition it becomes readily apparent that the answers elicited come within the purview of this rule.

In the light of the conclusion that the issue as to cause of death was triable in the case the objection that evidence appeared in the deposition which was not material or competent was not valid.

The exhibit to which objection was made was a map or drawing made by Murray to illustrate his testimony wherein he described the area in which his command and the enemy forces were operating when O'Neil came to his death. In the light of the fact that his description was complete and the exhibit added nothing but picturization no reason is apparent as to why the exhibit should be regarded as inadmissible. The fourth assignment of error must be said to be without merit.

We return now to the sixth assignment of error and the third point of the third assignment which has not been discussed.

The point of the third assignment challenges the sufficiency of the proof of the defendant to support the contention that O'Neil came to his death while engaged in military service. The effect of the sixth assignment of error is to say that even if there was evidence that O'Neil came to his death while engaged in military service, within the meaning of the policy and

law, the question of the sufficiency of that evidence to sustain the defense was one to be decided by a jury and not one for the court on a motion for directed verdict.

In an approach to this it becomes necessary to ascertain the true meaning of the following from the war clause: "Should the Insured die * * *, from any cause while engaged in Military or Naval Service in time of war * * *."

Pertinent questions in this approach are: Does it mean die in combat? Does it mean die in activity directly related to but not necessarily in combat? Does it include death in actual military or naval service but away from any combatant area? Does it include death while a member of the military or naval forces but not at the time engaged in any character of military or naval service?

This language in the policy, similar language, and these questions have been before the courts of other jurisdictions and of our own on numerous occasions. The interpretations have not been uniform. No useful purpose would be served by directing attention to what has been said in other jurisdictions since this court has declared its own position. This position was declared in 1922 and no departure from that declaration has been discovered.

In Arendt v. North American Life Ins. Co., 107 Neb. 716, 187 N. W. 65, in the second syllabus point, this court said: "Where a policy of life insurance insured a person against death occurring in any part of the world and in any occupation or from any cause, except military or naval service in time of war, the company issuing the same is liable, even though the insured, at his death, was in the military service in time of war, if his death was not incident to or caused by such military service."

Application of this to the present case is to say that if O'Neil came to his death while in action in military

service or as an incident thereof, the face of the policy is not payable and the defendant is required only to make return of premiums with interest.

The facts as disclosed on the trial uncontrovertedly bring the death of O'Neil within the meaning and application of this rule. From the evidence on which plaintiff relied as prima facie proof of death a reasonable inference flows that O'Neil was killed in action. From this evidence the inescapable conclusion is that he died at least as an incident of military service in time of war.

The evidence referred to was that of James J. Altieri given by deposition. Altieri was a fellow officer of O'Neil. The record of his testimony in pertinent part is as follows: "Q- Lieutenant O'Neil was at the time of his death in the military service? A- That is true. * * * Q- You stated that you saw him or his body on November 5, 1943, in or near a town in Italy called Cesto Campano? A- That is right. Q- Was that in the battle area? A- It was slightly behind the battle area at the time. * * * Q- Do you know how he came to his death? A- That I don't know either. Q- Had he been at the front with his troops? A- Well, we took off on an operation the last time I saw Lieutenant O'Neil, and whether or not he actually participated in the battle, I don't know. Q- On what day was the battle fought? A- On the 4th. Q- And you saw him or rather his body on the 5th? A- That is right. I didn't see his body up at the front. I saw it behind the lines."

The testimony of the witness Murray on behalf of the defendant, which is in nowise in conflict with any other evidence in the case, makes it clear that the only reasonable inference of which the record is capable is that O'Neil was killed in action as contended by the defendant. The testimony in this connection summarized is that the witness ordered O'Neil into attack; that he did not actually see O'Neil killed but he did see him immediately thereafter; that at the time he was only

about 200 feet away; and that at the time they were under small arms, heavy mortar, and 88 millimeter fire.

In the light of this evidence and the proper interpretation and meaning of the war clause in the insurance policy there was no issue of fact as to the cause of death to be submitted to a jury. The trial court properly so concluded and likewise properly sustained the motion of the defendant for a directed verdict.

The judgment of the district court is affirmed.

AFFIRMED.