CHRISTIAN P. PETERSON, APPELLEE, V. STATE AUTOMOBILE INSURANCE ASSOCIATION, APPELLANT, IMPLEADED WITH FRANCES GIFFORD ET AL., APPELLEES.

70 N. W. 2d 489

Filed May 20, 1955. No. 33674.

*Chambers, Holland & Groth,* for appellant.

*Davis, Healey, Davies & Wilson* and *Robert A. Barlow, Jr.,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Christian P. Peterson, was involved in an automobile collision while driving his 1937 Chevrolet 4-door sedan in Lincoln, on December 1, 1951, about 6:20 p. m., when, by its terms, his annual automobile insurance policy thereon issued by defendant, State Automobile Insurance Association, had theretofore expired. Plaintiff subsequently brought this action against such defendant and other named defendants who allegedly had claims against him on account of the accident. The latter, who were only nominal defendants, need not be referred to again. In the action, plaintiff sought a declaratory judgment determining that defendant was liable to reimburse him for any damages sustained by him and for any judgments obtained against him as a result of the accident up to and including the limits of the insurance policy.

Plaintiff's theory of recovery was that by reason of customs and usages of automobile insurance companies and their agents, defendant negligently breached its duty to either advise plaintiff of the expiration date of his policy or to renew the policy or to advise him that it did not wish to continue on the policy, or in the alternative that such customs and usages were tacitly implied incidents to the policy requiring defendant to either advise plaintiff of the expiration date of his policy or to renew the policy or to advise him that it did not wish to continue on the same, and defendant breached the same by failing to do so.

So far as important here, defendant's answer traversed the material allegations of plaintiff's petition, and, after

trial on the merits whereat evidence was adduced, the trial court rendered a judgment. Therein it found and adjudged the issues generally in favor of the plaintiff and against defendant, State Automobile Insurance Association. Plaintiff was also awarded an attorney's fee of $500, as a part of the costs taxed to defendant. Defendant's motion for new trial was overruled, and it appealed, assigning in effect that the judgment was not sustained by the evidence but was contrary thereto and contrary to law. We sustain the assignments.

The material evidence is not in dispute and may be summarized as follows: One F. W. Blomenkamp is a druggist who also solicited and received applications for automobile insurance policies written and issued by defendant. In doing so he would contact a prospect, and if an application was obtained, he would deliver it to the Wendell Groth Agency, defendant's district manager or agent in Lincoln, who then forwarded the application to defendant's home office in Des Moines, Iowa, where and by whom all policies were written and issued. The policy when issued would be forwarded to the Groth Agency office and sent by it to Blomenkamp who would countersign same, as required by the Department of Insurance, and deliver the policy to the customer. He would also collect or attempt to collect the premium at that time or within 60 days after the effective date of the policy.

The policies were not continuous but only for a period of 1 year, and Blomenkamp had no authority to either write or issue any policy. He was given a copy of each policy issued, and as a general rule received a notice from the Groth Agency ahead of time informing him of the date when a given policy would expire. In some cases when he knew the policy was about to expire, he contacted the policyholder and inquired whether or not he wanted a new policy. In other cases he would tell the Groth Agency to order a new policy from defendant and after issuance thereof would deliver it

ahead of the expiration date. This was done not only to get the business, lest a competitor should sell his customer a policy, but also to keep his customers insured. In any event, after a policy was delivered, the customer was not required to accept it, and if within 60 days from its effective date he did not pay the premium, the policy automatically lapsed and he was not bound to keep the policy or pay any premium. In other words, if plaintiff had been timely notified of the expiration date he would not have been required to order a renewal, or if a new policy had been delivered to plaintiff before expiration or thereafter, he would not have been bound to accept it or pay the premium thereon.

A general insurance agent, who has sold automobile insurance in Lincoln for 11 years, testified that it was the custom of most such agents to either advise the insured of the expiration date of his policy and ask him whether or not he would like it renewed, or to notify him and automatically renew the policy. The time when that would be done varied among agencies, but the usual procedure was to do so 30 days in advance of expiration. It was done to keep the business in the office and to keep the customer insured. Sometimes when a renewal policy was delivered to a customer he refused to accept the policy or sent it back and bought his insurance elsewhere, which he had a right to do.

In 1949, plaintiff had an automobile insurance policy in another company covering his 1931 Chevrolet ½-ton pickup truck, and Blomenkamp solicited the business, whereupon plaintiff told him, "When it expires you can have it." Thereafter, plaintiff applied for a policy covering that truck. The policy was issued by defendant and delivered by Blomenkamp to plaintiff in due course. It was effective from July 6, 1949, to July 6, 1950, and plaintiff paid the premium August 26, 1949. A renewal policy covering the truck was thereafter ordered by Blomenkamp, issued by defendant, and delivered to plaintiff by Blomenkamp in the usual course, effective

from July 6, 1950, to July 6, 1951. The premium was paid by plaintiff July 28, 1950. In a similar manner a renewal policy was issued thereon and delivered to plaintiff effective from July 6, 1951, to July 6, 1952, and plaintiff paid the premium July 9, 1951.

In October 1950 plaintiff bought the 1937 Chevrolet 4-door sedan here involved. Plaintiff's daughter called Blomenkamp and ordered insurance thereon. An application was made for such a policy to be .effective at 12 a. m., October 19, 1950, for a period of 1 year. However, the car was being repaired and could not then be used by plaintiff, so issuance of the policy thereon was agreeably deferred, and when issued and delivered it was made effective from December 1, 1950, to December 1, 1951, at 12:01 a. m. Plaintiff paid the premium December 18, 1950. It is the policy directly involved herein.

Insofar as important here, the policy, a copy of which was filed with and approved by the Department of Insurance as required by section 44-348, R. R. S. 1943, reads: "Policy No. M472036 Expires 12-1-51 * * * Policy Period From 12-1-50 To 12-1-51 12:01 a. m. standard time at the address of the named insured * * * VIII * * * This policy applies only to accidents which occur and to direct and accidental losses to the automobile which are sustained during the policy period, * * *. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Association from asserting any rights under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the Attorney. * * * By acceptance of this policy the named insured agrees * * * that this policy embodies all agreements existing between himself and the Association or any of its agents relating to this insurance. * * * The total premium for this policy is due two calendar months from the policy effective date. Fail-

ure of the named insured to pay the total premium to the Home Office of the Association on or before the due date shall cause this policy to lapse and terminate as of such due date. * * *" Such provisions are plain, explicit, and unambiguous.

Nevertheless, plaintiff testified that since he gave Blomenkamp his automobile insurance business, he had paid no attention to it with regard to expirations or renewals, because he just left it to Blomenkamp, who always took care of it and brought out a policy. He said it was his desire to obtain a renewal of the policy had he known its expiration date, but he did not do so because neither Blomenkamp nor anyone else notified him about it. Plaintiff saw and talked with Blomenkamp on July 9, 1951, when he paid the premium on the last policy covering his Chevrolet pickup truck, but nothing was then said about the policy covering his Chevrolet sedan, "because I knew it wasn't due yet * * * I expected him to issue me a new policy, which he had always done before on the other car."

There is no evidence that defendant or any of its authorized agents sought to avoid issuing a renewal policy by the use of any clandestine act or stratagem. The only inference that can be drawn from the evidence is that if defendant had timely received an application or order for it, a new policy would have been issued, but defendant received no order therefor until after the accident when plaintiff's policy had expired.

Blomenkamp first learned of plaintiff's accident when he read about it in the Sunday paper December 2, 1951. Plaintiff's daughter also called him about it. Blomenkamp had not theretofore ordered a renewal policy or notified plaintiff of the expiration date of his policy because he had no notice or knowledge of its expiration date. On Monday, December 3, 1951, Blomenkamp reported plaintiff's accident to defendant's claim agent, and upon learning that the policy had expired, he called the Groth Agency and ordered another one without con-

sulting plaintiff. Such agency required a verification of the order, and plaintiff's daughter verified it. Thereupon defendant wrote and issued a new policy effective December 3, 1951, to December 3, 1952, at 12:01 a. m. In the usual course such policy was delivered to plaintiff, but he never paid the premium within the 60-day optional period, and on February 20, 1952, defendant notified him that such policy had lapsed for nonpayment of premium. In the meantime, defendant had notified plaintiff in writing that because the policy effective December 1, 1950, to December 1, 1951, at 12:01 a. m., had expired before the accident, it declined to afford coverage thereunder. Suits were ultimately filed against plaintiff to recover damages resulting from the accident, and he brought this action.

Plaintiff concedes that the policy involved had by its terms expired at the time of plaintiff's accident. Also, plaintiff makes no contention that there was any oral contract of insurance in force at that time or that the customs and usages of insurance companies created a contract of insurance which was then in force. Further, there is no evidence that either Blomenkamp, the Groth Agency, or the defendant ever orally or in any policy provision or otherwise agreed that defendant would remain bound up to the limits of the policy unless plaintiff was timely notified of the expiration date of his policy, or a renewal policy was timely issued. The question presented then is whether or not the mere customs and usages heretofore discussed would impose any duty upon defendant to do so or be liable to plaintiff up to the limits of the policy either in tort or contract. We believe they would not. In that connection, the many authorities relied upon and discussed by plaintiff are entirely distinguishable upon the facts and applicable law. To review them at length here would serve no purpose.

In Ring v. Kruse, 158 Neb. 1, 62 N. W. 2d 279, this court held: "In order to constitute actionable negli-

gence, there must exist three essential elements, namely, a duty or obligation which the defendant is under to protect the plaintiff from injury; a failure to discharge that duty; and injury resulting from the failure. The petition must allege these essential elements, and the proof must support them, or there can be no recovery." As stated in 38 Am. Jur., Negligence, § 12, p. 654: "In other words, there can be no actionable negligence where there is no act or service or contract which a party is bound to perform or fulfill. While the existence of a duty to use due care may be predicated merely upon a relation between the parties, and while its extent depends in the last analysis upon the circumstances of the particular case, it is of necessity a real duty in every case of negligence, not to be supplied by proof of mere usage or custom, and the care which must be observed in its performance is measured by a definite standard." See, also, National Iron & Steel Co. v. Hunt, 312 Ill. 245, 143 N. E. 833, 34 A. L. R. 63.

In 65 C. J. S., Negligence, § 18, p. 413, it is generally stated that: "Although inaction as well as action may be negligence, mere inaction does not constitute negligence in the absence of a duty to act. Even though a duty has been undertaken, if such undertaking was purely gratuitous, negligence cannot be predicated on abandonment of, or failure to perform, such duty."

In 44 C. J. S., Insurance, § 345, p. 1315, it is said: "Generally speaking, insured must exercise diligence in paying premiums when they are due." In Pierce v. Massachusetts Accident Co., 303 Mass. 506, 22 N. E. 2d 78, the general rule is stated that: "The custom of insurance companies to give notice of approaching days for the payment of premiums does not bind them contractually to continue to do so, and does not alter the duty of the insured to pay, whether he gets notice or not. Thompson v. Insurance Co. 104 U. S. 252, 258, 259. Kukuruza v. John Hancock Mutual Life Ins. Co. 276 Mass. 146, 150." See, also, 45 C. J. S., Insurance, § 473

(5), p. 185. The case at bar does not come within any exception cited therein.

As stated in 44 C. J. S., Insurance, § 283, p. 1127: "A mere custom of companies or their agents in certain localities to renew, without request, is not sufficient to establish a renewal, unless it is of such a nature as to be binding on insured as well as on insurer." Also, in Gresham v. Norwich Union Fire Ins. Society, 157 Ky. 402, 163 S. W. 214, it is said: "A mere custom to renew will not of itself bind the company. There must be a contract to renew." Also, in Nippolt v. Firemen's Ins. Co., 57 Minn. 275, 59 N. W. 191, it is said: "Then, if such a custom existed, and it was valid, it would not bind the plaintiff to pay the premium for such a renewal of policy; and, unless he was himself bound by such a custom, he cannot hold the opposite party." As stated in 25 C. J. S., Customs and Usages, § 5, p. 80: "A custom must be compulsory, and not left to each one's option to obey it. Likewise, a usage, in order to be regarded as entering into a contract, must be clearly distinguished from mere acts of courtesy or accommodation."

In 55 Am. Jur., Usages and Customs, § 27, p. 287, it is said: "Usages and customs are primarily of importance in the field of contractual relations. Their operation and effect in the field of tort liability is limited. * * * The broad general rule is that proof of a valid usage or custom is admissible to annex incidents to a written instrument, to aid in its construction, and to ascertain the intention of the parties in reference to matters about which the contract is silent, provided such usage or custom is not contradictory of or inconsistent with the plain terms of the written agreement and its effect is not to add to or ingraft any new agreement or stipulation thereon." Also, as said in § 28, p. 289: "Although admissible to aid in the construction of the terms of a written contract and for the purpose of aiding the court in arriving at the intention

of the parties thereto, the effect of a custom or usage upon contractual obligations of parties to litigation is dependent upon the existence of an actual contract between the parties; a usage or custom cannot take the place of a contract or create a contract where none has been made by the parties. 'Where there is no contract, proof of usage will not make one.'" Also, in § 30, p. 291, it is said: "Evidence of custom or usage is admissible to explain the meaning of words and phrases used and to annex to such contract certain incidents which circumstances indicate the parties intended to annex when the words they have used do not necessarily exclude the operation of such custom or usage." As said in § 31, p. 293: "An express written contract embodying in clear and positive terms the intention of the parties cannot be varied by evidence of usage or custom which either expressly or by necessary implication contradicts the terms of such contract. Such evidence is inadmissible either to restrict or enlarge the explicit language of the instrument in question, or otherwise to control the real intent of the parties. A custom or usage cannot be relied upon to make the legal rights of the parties to a contract other than as expressed by the plain terms of the contract."

As said in 29 Am. Jur., Insurance, § 1456, p. 1092: "In general, contracts of insurance are to be interpreted in the light of the usages and customs affecting such agreements, where the terms used are of doubtful meaning otherwise; and evidence of a general custom or usage which does not conflict with the express terms of the policy is admissible as an aid to the construction of the contract. * * * As a further qualification, evidence of usage or custom is not admissible to contradict the terms of an insurance policy; and where a written contract is susceptible on its face of a plain and unequivocal interpretation, resort cannot be had to evidence of custom or usage to explain its language or qualify its meaning." As said in 25 C. J. S., Customs

and Usages, § 30, p. 118: "The terms of a contract prevail over a trade custom or usage. Where the terms of an express contract are clear and unambiguous, they cannot be varied or contradicted by evidence of custom or usage, and this is true whether the contract is written or verbal." See, also, Newark Fire Ins. Co. v. Smith, 176 Ga. 91, 167 S. E. 79, 85 A. L. R. 1330; City Mortgage & Discount Co. v. Palatine Ins. Co., 226 Ala. 179, 145 So. 490.

As stated in Fireman's Fund Ins. Co. v. Williams, 170 Miss. 199, 154 So. 545, citing authorities: "Next, it is insisted that the custom and usage alleged is sufficient in this case, independent of the oral agreement, to create an enforceable contract by implication. We are unable to perceive the validity of this contention. The patent and obvious answer to this view is that it is elementary law that usage and custom cannot create a contract or liability where none otherwise exists, and custom and usage may not be invoked in contravention of law."

Furthermore, plaintiff dealt solely with Blomenkamp, who was merely a soliciting agent, authorized only to procure applications and collect premiums. After the policy was issued, delivered, and premium paid, defendant would not then be bound by any acts or promises made by Blomenkamp beyond the terms of the policy, under the facts and circumstances presented in this case. Parker v. Knights Templars & Masons Life Indemnity Co., 70 Neb. 268, 97 N. W. 281; Dohlin v. Dwelling House Mutual Ins. Co., 122 Neb. 47, 238 N. W. 921; Krug Park Amusement Co. v. New York Underwriters Ins. Co., 129 Neb. 239, 261 N. W. 364.

The authorities heretofore set forth are applicable and controlling. In the light thereof, and our conclusions herein, plaintiff cannot recover; therefore, we are not required to discuss the question of allowance of attorney's fees, except to say that in such a situation none are allowable.

For the reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is reversed and the cause is remanded with directions to render a judgment against plaintiff and for defendant, State Automobile Insurance Association, in conformity with this opinion. All costs are taxed to the plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.