SCOTTSBLUFF NATIONAL BANK, A CORPORATION, APPELLANT,
v. FIRST STATE BANK, GOTHENBURG, NEBRASKA, A
CORPORATION, APPELLEE.
76 N. W. 2d 445

Filed April 20, 1956. No. 33901.

*Mothersead, Wright & Simmons* and *Robert M. Harris,* for appellant.

*Beatty, Clarke, Murphy & Morgan,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Scottsbluff National Bank, brought this action against defendant, First State Bank, Gothenburg, Nebraska, seeking to recover damages allegedly caused by defendant's negligence in failing to collect or timely comply with instructions to wire nonpayment of a check drawn on defendant. The material issues were traversed by defendant's answer and plaintiff's reply, whereupon a jury was waived and the cause was tried to the court. Subsequently a judgment was rendered which found and adjudged the issues generally against plaintiff and in favor of defendant and dismissed the action at plaintiff's cost. Plaintiff's motion for new trial was overruled and it appealed, assigning in effect that the judgment was not sustained by the evidence but was contrary thereto and contrary to law. We conclude that the assignment should not be sustained.

The parties incidentally involved will be designated as follows: Oscar Linker, drawer of the check, as Linker; his wife, Armina Linker, as Mrs. Linker; Jack E. Mack, doing business as Western Construction Co., payee of the check, as Mack; First National Bank of Lincoln, plaintiff's correspondent, as Lincoln; the Omaha branch of the Federal Reserve Bank, as Omaha; and John B. Cook, Sr., as Cook.

The material evidence may be summarized as follows: On May 16, 1952, Linker gave Mack a check

payable to Western Construction Co. and drawn on defendant for $4,233. Then there was only $193.87 in Linker's account, a fact well known by both Linker and Mack. The word "Hold" was written in bold letters across the lower left-hand corner of the check at the time it was issued, and Mack then agreed with Linker that Mack would hold the check and could not cash it until he had proved that a steel building then being constructed by Mack under a written contract with the Linkers was clear of all liens upon which "people were slapping liens * * * right and left." Subsequently, the Linkers were required to pay off all such liens in an amount equal to or greater than the check, so that it was without any consideration

Nevertheless, on May 27, 1952, 11 days after the date on which the check had been drawn, Mack endorsed it, "Western Construction Co. Jack E Mack" and presented it to plaintiff for payment or deposit. When so presented Mack or some other person had drawn several lines with a pencil and two different colors of ink through the word "Hold" but such word and the alteration thereof were at all times entirely legible. Mack then had a small account in his own name and one in the name of Western Construction Co. with plaintiff, who well knew that both such depositors were financially irresponsible. Therefore, plaintiff refused to give either one or the other absolute unconditional credit for the check involved or any other out-of-town check, a fact well known to Mack at all times. Thus, plaintiff issued a deposit slip to "Jack E. Mack * * * May 27, 1952 * * * Checks as follows: Oscar Linker $4,233.00." Such deposit slip also conditionally provided that Mack's deposit of such sum was dependent upon final payment of items received for deposit or collection at plaintiff's own office, and reserved plaintiff's right to timely charge back any item "drawn against insufficient funds or otherwise not good or payable." Further, such $4,233 item was encircled on Mack's original ledger account

and a notation "Hold $4,233 A. A. H." was made thereon by A. A. Hulse, plaintiff's vice president.

Prior to presentation of the Linker check to plaintiff, Mack owed Cook a past-due debt of about $10,000. Cook was attempting to collect the debt, so Mack showed him the Linker check. However, Cook testified that he did not remember seeing the word "Hold" on the check, although by casual inspection it was clearly observable, and denied that he had anything to do with attempting to strike it out. In that regard, Cook was a borrower from and substantial depositor in plaintiff bank, having on deposit at all times here involved substantially more than $4,000.

After Mack delivered the Linker check to plaintiff on May 27, 1952, it was mistakenly sent by plaintiff to the First State Bank of Scottsbluff instead of to defendant. It was then returned to plaintiff on May 28, 1952, and on that same date Mack gave Cook a check drawn upon plaintiff for $4,000, purportedly to apply on Mack's past-due indebtedness to Cook, who then took such check to plaintiff and presented it for payment. Thereupon plaintiff refused payment, telling Cook that payment "would depend on whether we would have a wire by Monday night, or Tuesday night," about the Linker check telling plaintiff "whether the check was dishonored." Plaintiff thus refused to give Cook "unconditional credit for the $4,000" because "We were waiting to find whether" the Linker "check had been paid." Monday night was June 2, 1952, and Tuesday night was June 3, 1952. Plaintiff's evidence was that it normally allowed 5 days for such checks to clear, although it realized that defendant might make mistakes as sometimes happened in banks, and that defendant might also have difficulty and delay in collecting the Linker check. However, plaintiff claimed that defendant should have wired Omaha within 5 days from May 28, 1952, if it had not been paid. In that regard, June 2, 1952, was the fourth banking day, and June 3, 1952, was the fifth banking day.

In that situation, plaintiff wanted to help its good customer Cook get in ahead of and have a preference in order to deceive and defeat the rights of any other creditors to whom Mack might in the meantime give checks on his account. Thus, on May 28, 1952, cooperating with Cook in order to accomplish that result, plaintiff wrote up a cashier's check for $4,000 payable to Cook. However, plaintiff refused to deliver such check to Cook but held that check in its own hands and under its control, telling Cook that plaintiff would deliver and pay the cashier's check only if the Linker check was first paid. In other words, it was distinctly understood and agreed between plaintiff and Cook, both when Cook presented Mack's $4,000 check to plaintiff which it refused to pay and when plaintiff wrote up the $4,000 cashier's check payable to Cook which plaintiff refused to deliver to him, that Cook was not to be paid the $4,000 unless plaintiff first received $4,233 on the Linker check.

Also, on May 28, 1952, plaintiff endorsed the Linker check "Pay to the order of any bank, banker or trust co." and forwarded it, together with other items, to Lincoln for collection and clearance, with instructions "Wire non-payment of all items, $1,000.00 or over giving endorser." Lincoln received the check May 29, 1952, and forwarded it to Omaha where, Decoration Day intervening, it was received May 31, 1952. Omaha then forwarded it, together with other items, to defendant with instructions "Wire advice of nonpayment of all items of $1,000 or over."

Sunday intervened, and defendant received the check on Monday, June 2, 1952. Defendant then mistakenly remitted the amount thereof, included in the total of other items, to Omaha by draft. Plaintiff, and defendant as well, concededly operated under a delayed posting system whereby items received for deposit or paid on one date were posted on the ledger accounts the next day. Thus, on June 3, 1952, it was discovered that de-

fendant's employees had mistakenly charged the Linker check against the Linker Super Service account instead of against the Oscar Linker account upon which the check had been drawn. The former account contained ample funds with which to have paid the check, but the latter account had only $193.87 on deposit therein. Thereupon, defendant immediately corrected its records by crediting back the amount of the check to the proper account. Defendant then deducted that sum from its remittance of other items to Omaha, about which no complaint is here made.

In the meantime, the Linker check was never marked or cancelled "Paid" and on June 3, 1952, immediately upon discovering its mistake and the insufficiency of the Oscar Linker account, defendant attempted to contact the Linkers. However, they were out of town and could not be found or contacted until after closing hours on June 4, 1952. At that time defendant was informed by Mrs. Linker that the Linker check had been conditionally delivered to Mack, that it was without any consideration, and had been materially altered, whereupon defendant was ordered to stop payment. Thereupon, after defendant's closing hours and after Omaha's closing hours on June 4, 1952, defendant wrote "Payment stopped" across the face of the check and returned it to Omaha by regular mail, where it was received the morning of June 5, 1952, at the opening of Omaha's next business day. On that date at 12:25 p. m. Lincoln received a code wire from Omaha reading as translated "Returning unpaid check on First State Bank, Gothenburg, Nebr. $4,233.00 — Your letter of May 29, 1952 — reason 'Payment Stopped', endorsed by Scottsbluff National Bank, Scottsbluff, Nebr." Likewise, on that same date at 1:47 p. m. plaintiff received a code wire from Lincoln reading as translated "We are advised returning unpaid check on ————— Payment Stopped."

In the meantime, notwithstanding the fact that plaintiff had told Cook at the time it wrote out the cashier's

check May 28, 1952, that it would deliver and pay it only when plaintiff received the money on the Linker check, Cook's secretary came to plaintiff on June 2, 1952, to get the money on the cashier's check. There is evidence that plaintiff then told her to wait until after banking hours on June 3, 1952, which was the next day after defendant received the Linker check, when plaintiff would probably have a wire with regard to its payment, and that Cook's secretary came back as instructed. Thereupon, notwithstanding the fact that plaintiff had not yet received any return of or remittance or wire or other information about the Linker check, Cook's secretary endorsed the cashier's check "Deposit only John B. Cook," followed by her initials. Clearly such check was perforated "Paid 6-2-52 76-157," but plaintiff explained that such date was erroneous and should have been June 3, 1952, because the bookkeeper had neglected to set up the date on the canceller machine. Be that as it may, the $4,000 item was posted on Cook's ledger account as of June 3, 1952, although plaintiff, under its delayed posting practice, would have posted it as of June 4, 1952, if, as claimed by it, the check had been cancelled as paid or deposited on June 3, 1952.

After the endorsement "deposit only," plaintiff gave Cook's secretary a deposit slip which read "John B. Cook, Sr. * * * 6-3-1952 * * * Checks as follows: cashier's ck. $4,000 for Jack Mack payment of 5/28/52." That deposit slip also conditionally provided that Cook's deposit of such sum was dependent upon final payment of items received for deposit or collection at plaintiff's own office and reserved plaintiff's right to timely charge back any item "drawn against insufficient funds or otherwise not good or payable." In that regard, the evidence is that plaintiff deposited the cashier's check with the mistaken idea that the Linker check had been paid, and if plaintiff had known otherwise it would not have given Cook credit for it. When plaintiff found out that

the Linker check had not been paid, Cook then and thereafter always had more than ample funds against which plaintiff could have charged back the $4,000 item, but plaintiff did not do so and has never yet even made any demand upon Cook for payment of it. It is clear, however, that since June 5, 1952, plaintiff has partially reimbursed itself in the amount of $1,603.32 by the application of credits belonging to Mack. Whether or not plaintiff could have recharged or might yet recharge Cook's account or recover from him any loss it allegedly sustained is not an issue for decision here and we express no opinion upon it. It is sufficient for us to say, as concluded by the trial court, that plaintiff cannot recover its alleged loss or any part thereof from defendant.

It should be noted that this is not an action based upon the Linker check, or one to establish the liability of any party thereon, or one for liability on account of the release of any parties to the Linker check. Rather, this action was to recover damages allegedly caused by negligence of defendant in failing to collect the Linker check or timely wire nonpayment thereof.

In that regard, as held in Ring v. Kruse, 158 Neb. 1, 62 N. W. 2d 279: "In order to constitute actionable negligence, there must exist three essential elements, namely, a duty or obligation which the defendant is under to protect the plaintiff from injury; a failure to discharge that duty; and injury resulting from the failure. The petition must allege these essential elements, and the proof must support them, or there can be no recovery." See, also, Peterson v. State Automobile Ins. Assn., 160 Neb. 420, 70 N. W. 2d 489.

As held in Henefin v. Live Stock Nat. Bank, 116 Neb. 331, 217 N. W. 91, 58 A. L. R. 758: "In an action for negligence in the routing and presentment of a check indorsed to a bank for collection, the burden is upon the plaintiff to show that the negligence proved was the proximate cause of his loss."

Also, as held in Omaha Nat. Bank v. Kiper, 60 Neb. 33, 82 N. W. 102: "In case a debt is lost through the negligence of a collecting agent, the measure of damages is the actual loss resulting from such agent's omission of duty." Further, such case is authority for the rule that it is necessary for a plaintiff to show a reasonable probability that with due care the collection would have resulted.

Several statutes have relation to the issues presented here. See, §§ 62-202 to 62-218, R. R. S. 1943. In that connection, plaintiff concedes that defendant was under no obligation or duty whatever when it received the Linker check to undertake to collect same, since at that time it had no existing agreement with plaintiff, or Mack, or Lincoln, or Omaha. Plaintiff concedes that defendant then had a right to return the check to Omaha on the day of its receipt in the exercise of its right to make payment thereof only at its own counter and thus avoid any liability. In that respect also, plaintiff at its election, exercised with reasonable diligence, had a right to treat the Linker check as dishonored by nonpayment when defendant retained the check without return or remittance on the day of its receipt.

However, plaintiff argued that defendant did not exercise its right to make payment only at its counter but instead undertook to collect the Linker check for plaintiff and in making such choice entered into a new relationship with plaintiff which, under the facts and circumstances, required defendant to exercise ordinary care and follow instructions in attempting to make the collection despite the want of any contractual relationship or statutory duty except that stated in section 62-207, R. R. S. 1943, which provides: "It shall be the duty of the initial or any subsequent agent collecting bank to exercise ordinary care in the collection of an item, and, when such duty is performed, such agent bank shall not be responsible if for any cause payment is not received in money or an unconditional credit given

on the books of another bank, which such agent bank has requested or accepted. An initial or subsequent agent collecting bank shall be liable for its own lack of exercise of ordinary care but shall not be liable for the neglect, misconduct, mistakes or defaults of any other agent bank or of the drawee or payer bank."

In such respect, plaintiff also relied upon 38 Am. Jur., Negligence, § 14, p. 655, § 21, p. 662; Kuska v. Nichols Construction Co., 154 Neb. 580, 48 N. W. 2d 682; Fahrenbruch v. Peter Kiewit Sons' Co., 148 Neb. 460, 27 N. W. 2d 680; 9 C. J. S., Banks and Banking, § 235, p. 488; 7 Am. Jur., Banks, § 659, p. 478, § 660, p. 479, § 663, p. 481, § 668, p. 483, § 669, p. 484.

Be that as it may, concededly defendant received the Linker check on June 2, 1952, and it could not have been collected over defendant's counter or otherwise. However, either on June 2, 1952, the day defendant received the check, which was the fourth banking day, or on June 3, 1952, the fifth banking day, plaintiff accepted the Cook cashier's check for "deposit only" and cancelled it as paid. It could reasonably be inferred that such step was taken on June 2, 1952. Clearly, on June 3, 1952, under plaintiff's concededly delayed posting practice, credit therefor was posted on Cook's ledger account by plaintiff, well knowing that defendant had not returned or remitted for the Linker check upon which payment of the cashier's check depended, and having notice not only that the Linker check had been materially altered, but also that Mack was financially irresponsible and had not presented the check for deposit or payment within a reasonable time after its issuance.

This is not a case where other persons in the meantime had drawn checks on Linker's account and thereby made collection impossible and caused plaintiff to suffer a loss. There is no evidence that defendant did not in all good faith attempt to collect the check, which was concededly impossible. To have wired Omaha on June 4, 1952, when payment was stopped, would have

served no purpose since Omaha had already closed for its business day and plaintiff's questionable collaboration with Cook had already been consummated, either on the day defendant received the check or on the day thereafter. Do the facts and circumstances heretofore set forth justify or require reversal? We believe not.

Defendant's answer denied generally and among other things alleged that it was not guilty of any wrongful or negligent act in handling the check as alleged by plaintiff, and defendant alleged that plaintiff suffered no damage or injury on account of any act or omission of defendant, but rather if plaintiff suffered any loss it was caused by its own negligence and wrongful acts. Plaintiff's reply generally and specifically denied such allegations and realleged that defendant was negligent as alleged in its petition, which pleaded that negligence of defendant caused plaintiff to suffer a loss.

The trial court, upon consideration of the pleadings and evidence, found and adjudged the issues generally against plaintiff and in favor of defendant, and dismissed plaintiff's action. True, the trial court also found that under the circumstances defendant owed no duty to plaintiff, but such reason could not change the result if the judgment in favor of defendant was correct and should be affirmed in any event. Sopcich v. Tangeman, 153 Neb. 506, 45 N. W. 2d 478.

Recently, in Granger v. Byrne, 160 Neb. 10, 69 N. W. 2d 293, this court held: "When the evidence with relation to negligence is conflicting or such that minds may reasonably reach different conclusions therefrom with regard to its existence, the issue should be submitted to the jury for its determination.

"In determining the sufficiency of evidence to sustain a verdict it must be considered most favorably to the successful party, any controverted fact resolved in his favor, and he must have the benefit of inferences reasonably deducible from it."

It is also elementary that: "Findings of a court in a

law action in which a jury is waived have the effect of the verdict of a jury, and judgment thereon will not be disturbed unless clearly wrong." Scottsbluff Nat. Bank v. Blue J Feeds, Inc., 156 Neb. 65, 54 N. W. 2d 392.

Such rules are applicable and controlling here, since, in the light of the evidence, the trial court could reasonably have found that defendant was not guilty of any negligence which was the proximate cause of any damage to plaintiff. Rather, it was more reasonable to conclude that plaintiff's loss, if any, was caused by its own negligence and wrongful acts.

For reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed. All costs are taxed to plaintiff.

AFFIRMED.