HAZEL EXSTRUM, APPELLEE, V. UNION CASUALTY AND LIFE
INSURANCE COMPANY, A CORPORATION, APPELLANT.

86 N. W. 2d 568

Filed December 6, 1957. No. 34243.

*Stiner & Boslaugh,* for appellant.

*Dryden & Jensen,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an action at law brought by Hazel Exstrum
as plaintiff against the Union Casualty and Life Insur-
ance Company, a corporation, defendant, in the district
court for Buffalo County, the purpose of the action be-
ing to recover on a group life insurance policy issued on
the life of Clayton D. Exstrum, deceased, husband of

the plaintiff, wherein she was named as beneficiary. Proof of the death of her husband was made by the plaintiff, and the defendant company refused to allow her claim. By stipulation of the parties, a jury was waived and trial was had to the court. After trial to the court, judgment was rendered for the plaintiff. The defendant filed a motion for new trial which was overruled. From the order overruling the motion for new trial, the defendant appeals.

We summarize the amended petition of the plaintiff. It alleged that prior to October 1, 1954, the defendant entered into a group policy of life insurance with contributing employers and trustees and successors of the Central States, Southeast and Southwest Areas Health and Welfare Fund; that the plaintiff's husband, Clayton D. Exstrum, was an employee of the Brown Transfer Company, a contributing employer to the welfare fund, from March 5, 1954; that Clayton D. Exstrum was employed by the Brown Transfer Company as a truck driver and dock worker, but not working regular hours; that he was a regular, active employee of the Brown Transfer Company and remained so up to and including the date of his death on January 19, 1955; that Clayton D. Exstrum became a member of the union, and by virtue of an agreement between the truck drivers' union and the Brown Transfer Company, the latter remitted payments directly to the Central States, Southeast and Southwest Areas Health and Welfare Fund of Chicago, Illinois, which were the premiums for the insurance in this matter; that the defendant issued and delivered to Clayton D. Exstrum a certificate of life insurance setting forth the effective date of such insurance as October 1, 1954; and that the Brown Transfer Company commenced remittance to the defendant in accordance with instructions. It was further alleged that such amounts were accepted and retained by the defendant. The plaintiff alleged the death of her husband, the proof thereof, and claim made to defendant; that

the policy of insurance was in full force and effect, all premiums paid thereon, and all conditions precedent to the establishment of liability complied with; and that on March 3, 1955, the defendant, by letter to the plaintiff, refused to pay under the policy of insurance. The plaintiff prayed for judgment in the amount of $2,500 and attorney's fees as provided under the statutes of Nebraska.

The defendant's answer, after making certain admissions, alleged that the policy of insurance did not become effective as to the decedent for the reason that he was not actively at work on and after January 1, 1955, the effective date of the policy; that the policy was an Illinois contract; and that under the law of Illinois the certificate of insurance was not considered a part of the insurance contract and there could be no right of action on the certificate issued to the insured as distinguished from the master policy. The answer prayed for dismissal of the plaintiff's action.

The plaintiff filed a motion for permission to file a reply which was allowed by the court to be filed at the time of the decision of the court finding for the plaintiff. The reply alleged that the defendant was estopped to claim any other defense to the policy than that evidenced by a letter denying liability which will be discussed later in the opinion.

While the defendant contends that the trial court abused its discretion in permitting the plaintiff to file a reply as heretofore indicated, we conclude that there was no prejudicial error on the part of the trial court in granting the plaintiff the right to file the reply, and the trial court did not abuse its discretion as contended for by the defendant.

The facts are not in dispute. The record discloses that the group insurance policy was issued as part of a plan to provide life insurance benefits for members of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, which

will hereinafter be referred to as the union. The assured named in the policy was the trustees and successors of the Central States, Southeast and Southwest Areas Health and Welfare Fund, which will hereinafter be referred to as the fund. The fund is, by written agreement, a trust. The general plan was that the employers having union contracts, and who are referred to in the insurance policy as "contributing employers," would contribute on behalf of their union members to the fund, and the fund in turn would pay premiums for group life insurance on the employees who were union members.

The Brown Transfer Company of Kearney, Nebraska, had been a contributing employer with respect to union members then in its employ since the creation of the fund in 1950. The union had a contract with the Brown Transfer Company requiring it to make contributions to the fund for each union member employee, after 30 days had elapsed following such employee becoming a member of the union. Clayton D. Exstrum, hereinafter referred to as Exstrum or the decedent, was employed by the Brown Transfer Company on March 5, 1954, and became a union member on September 13, 1954. The Brown Transfer Company made contributions to the fund for and on behalf of Exstrum. These contributions to the fund were made in connection with report and remittance forms. Four copies of these forms were made. The Brown Transfer Company retained one copy, one was sent to the LaSalle National Bank of Chicago, Illinois, the receiving bank, one to the union, and one to the fund. The bookkeeper for the Brown Transfer Company identified certain exhibits which are the remittance sheets for the payment of premiums on Exstrum's insurance made by the Brown Transfer Company for the insurance on the life of Exstrum from and after November 1, 1954, to January 15, 1955. There is apparently no controversy with reference to the payment of the premiums by the

Brown Transfer Company. We need not discuss these separate payments or the exhibits exemplifying them.

We deem it advisable at this point to set out some of the provisions of the insurance policy here involved.

A "contributing employer" is defined in the insurance policy as follows: "* * * an Employer in good standing who is making payments into a Trust Fund, which is administered by the Assured for the purpose of providing insurance benefits for a class or classes of employees of such Employer pursuant to an agreement between the Assured and the Employer."

The original policy was amended, wherein an eligible employee is defined as follows: " 'Eligible Employee' as used in this policy means an employee actively at work with a Contributing Employer whose employment is covered under the collective bargaining agreement establishing the Central States, Southeast and Southwest Areas Health and Welfare Fund."

Paragraphs 1, 2, 3, and 4 of the policy amendment, relating to the effective date of insurance, provide as follows: "1. The effective date of this policy as to an employer becoming a Contributing Employer after April 1, 1952 shall be the first (1st) day of the calendar month following two (2) full calendar months from the date such employer becomes obligated to make his contributions to the Policyholder. The effective date as to such Contributing Employer may be a date earlier than that set forth by agreement between the Contributing Employer, the Policyholder, and the Company.

"2. Each employee employed on the effective date of his employer's insurance, for whom contributions have been made for two (2) full calendar months on his behalf prior thereto, is insured on such effective date.

"3. Each employee not insured on the effective date of his employer's insurance is insured on the first (1st) day of the calendar month following two (2) full cal-

endar months of contributions made by his employer on his behalf.

"4. Each employee not in active employment on the effective date of his insurance after the effective date of this policy shall be insured on the first (1st) day of his employment."

The policy also contains this provision with reference to issuance of certificates: "The Company will issue to the Assured, for delivery to each insured employee, a certificate setting forth a summary of the essential features of the insurance coverage to which the employee is entitled and to whom the benefits are payable."

A certificate was issued wherein the defendant insurance company stated that it "Certifies that it has insured certain employees of Contributing Employers to the TRUSTEES AND SUCCESSORS OF THE CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND (Herein called the Assured) for Group Life Insurance under Group Life Policy Number L. I. T. - 90, and that Clayton D. Exstrum an employee, is insured for the sum of $2,500.00 payable in event of death of such employee to Hazel Exstrum - Wife beneficiary designated by the employee to receive such benefits as are payable in the event of the death of the employee. Effective date Oct 1 1954 116826 Certificate Number (Provided Employee is then regularly performing the duties of his occupation)."

The defendant insurance company addressed a letter dated March 3, 1955, to Mrs. Hazel Exstrum, wife and beneficiary of Clayton D. Exstrum, deceased, which stated as follows: "The Central States Welfare Fund indicates that the Brown Transfer Company began remitting to the Fund, on your husband's behalf, on Oct. 21, 1954. Under the rules of eligibility, he would have become eligible for insurance coverage on the first day of the calendar month following two (2) full months of contributions, or January 1, 1955. However, the

policy provides that: 'If an eligible employee is not in active employment on the effective date of his insurance, such eligible employee becomes insured on the day he returns to active employment.' Since your husband was not in active employment on January 1, 1955, and did not return to active employment prior to his death, he was not eligible for insurance coverage. We will, therefore, be unable to honor this claim." This letter was signed by the claims supervisor of the defendant insurance company.

The evidence by Exstrum's employer and his wife shows that Exstrum was employed as an extra man, subject to call, to drive a truck or work on the dock as the case might be; that during November and December this work was seasonal; and that he was not called to work from and after November 20, 1954, when he returned from his last trip and was ill. The testimony discloses that while he was in the hospital for tests at Kearney, Nebraska, and subsequently at Mayos at Rochester, Minnesota, prior to his death on January 19, 1955, had he been called to work he would have been able to work, but that there was no occasion to call him, and that he was continuously kept on the books as an employee until after his death.

The bookkeeper for the Brown Transfer Company testified that Exstrum was classified as an extra driver, which meant that he worked when he was called. He was carried on the books of the company as an employee at the time of his death. He was not paid for any work after November 20, 1954. Being an extra employee, he was paid by the hour or by the trip, and not weekly wages.

The following assignments of error are interrelated and will be discussed together later in the opinion: (1) The court erred in admitting in evidence the certificate of insurance for the reason that it was not properly a part of any insurance contract. (2) The court erred in concluding that the plaintiff was entitled to recover

on the certificate of insurance as an independent contract separate and distinct from the master policy. (3) The court erred in concluding that the defendant was bound by the recitals of the effective date of the policy as contained in the certificate of insurance. (4) The court erred in failing to construe the policy under the laws of Illinois. (5) The court erred in finding that defendant was estopped to contend that the certificate was not a part of the insurance contract.

The defendant contends that the insurance contract here being considered was made in the State of Illinois and is governed by the law of that state.

The Illinois statute referring to group life insurance contains a provision that the policy, the application of the employer or trustee of any association of employees, and the individual applications, if any, of the employees insured shall constitute the entire contract between the parties. Ch. 73, § 843, Ill. R. S. 1955. Subsection (d) of the Illinois statute provides for the issuance of a certificate of insurance.

The contract here considered provides: "This policy, the application of the Assured attached hereto, and the individual applications, if any, of the employees, constitute the entire contract between the parties hereto. All statements made by the Assured, or by the individuals insured, shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid the insurance, or be used in defense of a claim under it, unless it is contained in a written application."

The policy here involved provides, under the heading "Certificates": "The Company will issue to the Assured, for delivery to each insured employee, a certificate setting forth a summary of the essential features of the insurance coverage to which the employee is entitled and to whom the benefits are payable."

It is the contention of the defendant that the Illinois law governs because the negotiations for the purchase of

the policy were carried on in Chicago, Illinois, the policy was delivered there, and all premiums were paid in Chicago, Illinois.

The law is that a contract is made at the time when the last act necessary for its formation is done, and at the place where that final act is done. See, Restatement, Contracts, § 74, p. 80; Avondale v. Sovereign Camp, W. O. W., 134 Neb. 717, 279 N. W. 355; Stephan v. Prairie Life Ins. Co., 113 Neb. 469, 203 N. W. 626; McElroy v. Metropolitan Life Ins. Co., 84 Neb. 866, 122 N. W. 27, 23 L. R. A. N. S. 968.

We conclude that the contract in question is an Illinois contract.

The defendant argues that although subdivision (d) of the Illinois statute required that the group policy contain a provision for the issuance of a certificate to each insured employee, even though the certificate was issued it recited an erroneous effective date, for the reason that under the master policy, as set out in the statement of facts, the effective date of the policy insofar as Exstrum was concerned would be January 1, 1955; and that the purpose of the certificate was not to advise Exstrum of the detailed provisions of the policy, but rather to give him some evidence of the existence of the insurance.

It will be observed from the facts heretofore stated that on March 3, 1955, by letter, the defendant insurance company rejected the claim of the plaintiff, setting forth as the reason therefor that the policy provided that if an eligible employee was not in active employment on the effective date of his insurance, such eligible employee became insured on the day he returned to active employment, and that since the plaintiff's husband was not in active employment on January 1, 1955, and did not return to active employment prior to his death, he was not eligible for insurance coverage.

The defendant, in its answer, set up the defense that the deceased was not eligible under certain provisions of

the policy, that is, that the policy became effective on January 1, 1955, and on that date he was not in active employment. It is obvious that the defendant attempts to claim that the question here involved is also one of eligibility, and that the deceased was not actively at work. The defendant, on no occasion, said that Exstrum never became eligible for insurance. We believe the defendant is estopped, both in the pleadings and in this case, from raising any defense other than that upon which it rejected the plaintiff's claim for insurance. There is nothing before this court involving the payment of premiums, or any defense other than that set forth in the letter of March 3, 1955. There can be no implication from the letter that the defendant was denying that it issued a certificate of insurance to the deceased. What the letter did was to set forth one defense, that Exstrum was not actively employed on January 1, 1955. We deem the following to be applicable.

In Yates v. New England Mutual Life Ins. Co., 117 Neb. 265, 220 N. W. 285, it is said: "Where an insurance company, before being sued, * * * bases its refusal to pay life insurance to the beneficiary solely upon the ground that the policy had lapsed before the death of the insured, it will not be permitted to assert other and different defenses after litigation is begun.

"In such case, where the answer of the insurance company sets up a different ground of defense than that given as a reason for nonpayment of the policy, and no reply is filed, but the action is tried as though there was a reply, if facts showing an estoppel are admissible and admitted for other purposes, it is not necessary that estoppel be specially pleaded." In the instant case estoppel was specially pleaded in the reply.

In O'Neil v. Union Nat. Life Ins. Co., 162 Neb. 284, 75 N. W. 2d 739, it was held: "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon

another and a different consideration." See, also, Hamblin v. Equitable Life Assurance Society, 124 Neb. 841, 248 N. W. 397; Farmers Union Fidelity Ins. Co. v. Farmers Union Co-op. Ins. Co., 147 Neb. 1093, 26 N. W. 2d 122; Brown v. Security Mutual Life Ins. Co., 150 Neb. 811, 36 N. W. 2d 251.

And as said in Serven v. Metropolitan Life Ins. Co., 132 Neb. 637, 272 N. W. 922: "A party who gives one reason for his conduct and decision as to a matter involved in controversy cannot after litigation has begun defend upon another and a different ground." See, also, Moore v. Washington Nat. Ins. Co., 135 Neb. 29, 280 N. W. 221.

We conclude that the only defense to this action is that raised in the letter heretofore referred to.

The master policy provided for the issuance of a certificate of insurance. It is true that we are here dealing with an Illinois contract and that an Illinois statute has been pleaded by the defendant.

As provided in section 25-12,101, R. R. S. 1943: "Every court of this state shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States."

It is conceded by the defendant that it has found no decisions of the courts of Illinois interpreting the statute which it pleads. Our research has developed none. We have practically interpreted the concept of such a statute.

In the case of Hemmer v. Metropolitan Life Ins. Co., 131 Neb. 14, 267 N. W. 153, it was said: "When the certificate delivered to an employee, to certify that he is insured under a group or master policy issued to his employer, is also executed by the same insurance company which issued the group policy, then such policy, the application therefor, the certificate given the employee, and all amendments and riders attached to each, together constitute the entire contract between the employee and the insurance carrier." In Uptegrove v.

Metropolitan Life Ins. Co., 145 Neb. 51, 15 N. W. 2d 220, this court followed the case of Hemmer v. Metropolitan Life Ins. Co., *supra,* as set out above.

This action was brought in this state. We believe, under the Nebraska authorities heretofore cited, that the certificate of insurance issued to Exstrum became a part of the contract of insurance. The premiums on Exstrum's insurance were sent to the fund in payment of his insurance by the Brown Transfer Company, the contributing employer. The fund was the agent of the defendant insurance company authorized to receive and remit such premium payments to the receiving bank for the benefit of the insurance company. No premiums were ever returned to the Brown Transfer Company, the contributing employer. The fact that the fund might not have paid the amount of premiums to the receiving bank makes no difference. The fund, as agent of the defendant insurance company, was acting within the scope of its authority in accepting the premiums from the contributing employer for the benefit of the insurer, the defendant. In fact, the evidence that Exstrum was insured was manifested by the certificate. This was the only evidence he had of this fact. The master policy was in the possession of the fund. The defendant insurance company did not seek at any time to revoke or cancel the certificate but, to the contrary, gave Exstrum every right to rely upon the validity of the certificate of insurance and to believe he was insured. Had he been informed otherwise, he might have, in all probability, obtained insurance elsewhere or made other arrangements with reference to insurance. There is nothing in the record to show that he was not an insurable risk at the time the certificate of insurance was issued showing him to be insured as of October 1, 1954, when he was in the employ of the Brown Transfer Company.

We conclude that the defendant insurance company,

under the circumstances of this case, is estopped to deny liability.

Under the law of Nebraska, findings of a court in a law action in which a jury is waived have the effect of a verdict of a jury, and judgment thereon will not be disturbed unless clearly wrong. See Scottsbluff Nat. Bank v. First State Bank, 162 Neb. 475, 76 N. W. 2d 445.

Under the provisions of section 44-359, R. R. S. 1943, the plaintiff is allowed attorney's fees in the amount of $300 as costs, the defendant to pay all costs of this action.

The judgment of the trial court in the instant case is not clearly wrong and should be, and is hereby, affirmed.

AFFIRMED.

YEAGER, J., participating on briefs.